Argued and submitted October 9, 1984, affirmed May 7, 1985

EDWARDS,
*Petitioner on Review,*

*v.*

BONNEVILLE AUTOMOBILE INSURANCE COMPANY,
*Respondent on Review.*

(A8012-06795; CA A24511; SC S30959)

699 P2d 670

Anna M. Moran, Portland, argued the cause for petitioner on review. With her on the briefs was Gerald R. Pullen, Portland.

Thomas W. Brown, Portland, argued the cause for

respondent on review. With him on the briefs was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

LENT, J.

## LENT, J.

The issue is whether, because of a provision in the policy,[1] the defendant motor vehicle liability insurer is entitled to an offset against its liability policy limits for the sum it has paid to an injured person as personal injury protection (PIP) benefits.[2] The provision is:

"Any payments made by the Company under this insurance either as benefits to or on behalf of injured person or as reimbursement, pursuant to ORS 743.800 to 743.835 inclusive, to any other insurer or organization for such benefits paid by it shall be applied in reduction of the amount of damages which, because of bodily injury sustained in the same accident, such injured person may be entitled to recover from the Company or any other insurer under insurance afforded for either bodily injury liability or protection against uninsured motorists."

The facts are undisputed. Defendant had issued a motor vehicle liability policy to one Nilson for a specified premium insuring him against bodily injury liability for the minimum then required under Oregon law of $15,000 for each person and $30,000 for each accident.[3] Defendant charged a separate premium for the additional PIP coverage required by Oregon law.

While the policy was in force, plaintiff was riding in a motor vehicle operated by Nilson. The vehicle left the roadway and went down an embankment, colliding with some trees and causing bodily injury to plaintiff. Eventually, plaintiff made demand on defendant for the policy limits for bodily injury liability coverage. Defendant paid the sum of $15,000 to plaintiff with defendant's understanding that plaintiff took the legal position that he was entitled to PIP benefits in

---

[1] Except for the policy provision, this case presents the same issue that we considered in *Staiger v. Burkhart,* 299 Or 49, 698 P2d 487 (1985), and decided against the insurer. In that case we noted that the insurer had not brought to our attention any policy provision such as that in the case at bar. See footnote 2 of *Staiger.*

[2] ORS 743.800 and 743.805 provide that every motor vehicle liability insurance policy issued for delivery in Oregon must provide personal injury protection benefits in favor of certain persons. In general such benefits consist of payments for medical expenses and loss of income during the first year following the date on which a beneficiary sustains bodily injury resulting from the use or maintenance of a motor vehicle.

[3] *See* Or Laws 1979, ch 871 § 31.

addition to the $15,000 bodily injury liability coverage. Plaintiff was informed that defendant took the legal position that defendant

"is entitled to set off personal injury protection payments against bodily injury liability coverage so that the payment of $15,000 in this case represents all of the personal injury protection payments requested by the plaintiff and the remainder of the bodily injury liability coverage available under Mr. Nilson's policy."

Plaintiff then commenced this action to recover under the PIP benefits endorsement the amount of PIP benefits. By the time of trial the parties agreed that the amount of money involved was $11,000. The trial court gave judgment for defendant.

On plaintiff's appeal, the Court of Appeals affirmed, holding that the policy provision for setoff did not contravene the statutory scheme, ORS 743.800 to 743.835, and that the terms of the policy provision limited defendant's liability to $15,000.

We allowed plaintiff's petition for review to consider whether the policy provision does permit the setoff and whether it is permitted under the statutory scheme.

Plaintiff's position is that the policy provision is substantially the same as was ORS 743.835 as enacted in 1971. For convenience we juxtapose former ORS 743.835 and the policy provision:

*Policy provision.*

"Any payments made by the Company under this insurance either as benefits to or on behalf of any injured person or as reimbursement, pursuant to ORS 743.800 to 743.835 inclusive, to any other insurer or organization for such benefits paid by it shall be applied in reduction of the amount of damages which, because of bodily injury sustained in the same accident, such injured person may be entitled to recover from the Company or any other insurer under insurance afforded for either bodily injury liability or protection against uninsured motorists."

*Former ORS 743.835.*

"Payment of any benefit required by ORS 743.800 to or for any insured and any payment required by ORS 743.825 to any

health insurer or health care service contractor shall be applied in reduction of the amount of damage that the insured may be entitled to recover from any insurer under bodily liability or uninsured motorist coverage for the same accident."

Plaintiff acknowledges that under the pre-1975 statute the setoff sought here by defendant would have been allowed. Plaintiff points to the 1975 amendment of ORS 743.835 to read at the time of the accident here involved as follows:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damage that the insured may be entitled to recover from his insurer under uninsured motorist coverage for the same accident."

Plaintiff then reasons that because former ORS 743.835 was the only section in the personal injury protection law, ORS 743.800 to 743.835, that allowed this kind of setoff against bodily injury coverage and the legislature eliminated that right of setoff from the section, there is no statutory authority for a setoff. Moreover, argues the plaintiff, it must be concluded that the elimination of the right indicates a legislative determination that there was to be no such right, and defendant's policy provision contravenes the public policy decision of the legislature and must be held invalid.

In the trial court defendant contended that it was proceeding under ORS 743.830, which provides:

"If a motor vehicle liability insurer has furnished personal injury protection benefits, or a health insurer has furnished benefits, for a person injured in a motor vehicle accident, and the interinsurer reimbursement benefit of ORS 743.825 is not available under the terms of that section, and the insurer has not elected recovery by lien as provided in ORS 743.828, and is entitled by the terms of its policy to the benefit of this section:

"(1) The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident, to the extent of such benefits furnished by the insurer less the insurer's share of expenses, costs and attorney fees incurred by the injured person in connection with such recovery.

"(2) The injured person shall hold in trust for the

benefit of the insurer all such rights of recovery which he has, but only to the extent of such benefits furnished.

"(3) The injured person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, such rights.

"(4) If requested in writing by the insurer, the injured person shall take, through any representative not in conflict in interest with him designated by the insurer, such action as may be necessary or appropriate to recover such benefits furnished as damages from such responsible person, such action to be taken in the name of the injured person, but only to the extent of the benefits furnished by the insurer. In the event of a recovery, the insurer shall also be reimbursed out of such recovery for the injured person's share of expenses, costs and attorney fees incurred by the insurer in connection with the recovery.

"(5) In calculating respective shares of expenses, costs and attorney fees under this section, the basis of allocation shall be the respective proportions borne to the total recovery by:

"(a) Such benefits furnished by the insurer; and

"(b) The total recovery less (a).

"(6) The injured person shall execute and deliver to the insurer such instruments and papers as may be appropriate to secure the rights and obligations of the insurer and him as established by this section.

"(7) Any provisions in a motor vehicle liability insurance policy or health insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section."

Defendant argued:

"ORS 743.825 is inapplicable by its terms, and the defendant has not elected to recover by lien as provided by ORS 743.828. The *only question* would be whether the terms of the policy entitled the company to the benefit of ORS 743.830." (Emphasis added.)

Defendant acknowledged that it could not prevail under ORS 743.830 unless it was "entitled by the terms of its policy to the benefit of this section." Defendant then argued that its policy provision above quoted met the statutory test.

In its brief in the Court of Appeals, defendant argued that the text of ORS 743.830 did not distinguish between situations involving one insurer or more than one insurer. That is true. The statute gives the PIP payor the right to share in the proceeds of the payee's recovery from "any person legally responsible for the accident." Here the plaintiff's recovery was from Nilson, although the defendant's contract with Nilson required the defendant to pay on behalf of Nilson the damages for plaintiff's bodily injuries to the extent of the policy limits.

■ As we have noted in *Kessler v. Weigandt,* 299 Or 38, 699 P2d 183 (1985), and *Staiger v. Burkhart,* 299 Or 49, 698 P2d 487 (1985), ORS 743.830 confers on an insurer a statutory right similar to subrogation to the PIP benefits payee's recovery against the tortfeasor. If the insurance policy provision here involved were intended to invoke the benefits of ORS 743.830, we should expect to find a text similar to the text of the statute. Instead, we find insurance policy text substantially the same as the text of another statute, namely, former ORS 743.835. We conclude that this provision in defendant's policy was not intended to entitle defendant to the benefit of ORS 743.830 and that the provision does not entitle defendant to the benefit of that section. We do not reach, therefore, the issue of whether ORS 743.830 is applicable to the situation where one insurer has both coverages.

Because neither ORS 743.825, 743.828, 743.830 nor 743.835 entitles this defendant to its asserted right of setoff, defendant can prevail only if its policy provision governs and is not invalid as being against policy declared by the legislature.

As applicable to this case, the policy provision may be summarized as follows. Any PIP benefits payments made by the company to any insured person shall be applied to reduce the amount of damages which, because of bodily injury, the injured person may be entitled to recover from the company under insurance afforded for bodily injury. The parties agree that plaintiff was an insured person and that the company was obligated to pay to him PIP benefits. They agree that he was entitled to recover damages for the bodily injury from Nilson and thereby, although indirectly, from the company. If we assume, for the sake of argument, that plaintiff was entitled to

recover damages from Nilson in an amount greater than the sum of $26,000, nevertheless, he was entitled at the most to have the company pay only $15,000 under its liability coverage. The policy provision gives the company the right to apply PIP benefits payments in reduction of that amount, even though the company charged a premium for each coverage. It follows that the policy requires the company to pay $11,000 for PIP benefits and allows the company to reduce the amount payable under its liability coverage in that amount. That means that the payment of $15,000 exhausts the company's obligation under the policy.

■      The final issue is whether the "reduction" provision contravenes public policy.

In 1971 Oregon responded to the movement for "no fault" automobile insurance by passage of the personal injury protection benefits legislation, which became ORS 743.800 to 743.835. The bill for an act that resulted in the legislation was introduced at the request of the Insurance Commissioner's Special Advisory Committee on Auto Insurance. On May 19, 1971, the Insurance Commissioner testified before the Senate Judiciary Committee as follows:

"Section 9 [later codified as ORS 743.835] provides that the money paid by an insurer under this [PIP] coverage is not in addition to the policy limits in a limits case, but is subtracted from the policy. The same would be true if you had an uninsured motorist claim."

As we noted in *Kessler v. Weigandt, supra,* 299 Or at 44, 699 P2d 187, the statute did not exactly track with the explanation because the statute speaks to the minuend of damages rather than policy limits; however, ORS 743.835, as originally enacted, undoubtedly showed that the legislature intended that the liability insurer would have a setoff for PIP benefits that it had to pay.

Furthermore, as we discussed in *Kessler,* the Insurance Commissioner, as sponsor of the 1975 amendment to these statutes, did not intend that there be any public policy change. We held in *Kessler* that the legislative text did not continue the right of setoff theretofore existing under ORS 743.835 and that there was no "legislative history showing what legislative committee members or other members of the legislature may have considered the amendments to have

accomplished." 299 Or at 47. We applied the legislative text to deny the setoff claimed by the insurer.

A different aspect of the matter of legislative intent is presented in this case. The history, which we reviewed in *Kessler,* shows that the sponsor of the 1975 amendments believed the amendments not to work a change in the right of setoff. The right, as granted by the statute, was eliminated, but there is no history to show that any member of a legislative committee or other member of the legislature affirmatively believed that public policy, as expressed in the amendments, would prohibit a policy provision allowing the setoff. In other words, legislative history is silent on the matter. We are unwilling to conclude that that silence dictates a public policy diametrically opposed to what the legislature enacted in 1971 and to what the sponsors of the 1975 amendments believed to be unchanged. Accordingly, we reject the contention that the policy provision contravenes public policy.

The judgments of the trial court and of the Court of Appeals are affirmed.