Argued and submitted May 9, 1997, reversed and remanded in part; otherwise affirmed April 1, Hamilton's petition for review allowed September 29 (327 Or 553) North Pacific's petition for review on attorney fees allowed October 7, 1998 (327 Or 583)

NORTH PACIFIC INSURANCE CO.,
an Oregon corporation,
*Respondent,*

*v.*

Donald J. HAMILTON
and Bonnie J. Hamilton,
husband and wife,
*Appellants.*

(95-CV-0461-AB; CA A94301)

957 P2d 165

Bruce J. Brothers argued the cause for appellants. With him on the brief was Brothers, Steelhammer & Ash.

Stephen E. Lawrence argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

Warren, P. J., concurring.

**ARMSTRONG, J.**

Defendants Bonnie and Donald Hamilton appeal a grant of summary judgment in favor of plaintiff North Pacific Insurance Co. We affirm in part and reverse in part.

The facts are undisputed. Defendants are a wife and husband who owned a 1992 Mercury automobile. They were insured under a motor vehicle insurance policy issued by North Pacific. The policy had a $60,000 limit on liability coverage for one person in any one accident. It further provided, however, that it did

"not provide Liability Coverage for any person:

"* * * * *

"10.   For **bodily injury** or **property damage** to you or any **family member** to the extent that the limits of liability for this coverage exceed the limits of liability required by the Oregon financial responsibility law."

(Emphasis in original.) The relevant Oregon financial responsibility law is ORS 806.070(2)(a), which sets the minimum liability coverage for bodily injury to one person in any one accident at $25,000.

The policy also provided $25,000 in personal injury protection (PIP). It went on to provide, however, that

"[r]egardless of the number of persons or organizations insured, policies or bonds applicable, claims made or insured motor vehicles to which this insurance applies, *our liability for Personal Injury Protection benefits with respect to* **bodily injury** sustained by any one **insured** in any one **motor vehicle** accident is limited as follows:

"* * * * *

"3.    * * *

"Any payments made by us under this insurance to an **insured** shall be applied in reduction of the amount of damages which, because of **bodily injury** sustained in the same accident, the **insured** may be entitled to recover from us for bodily injury liability insurance."

(Boldface emphasis in original; italic emphasis supplied.)

On July 13, 1994, Bonnie was involved in a single-car accident while driving the couple's Mercury. Donald was a passenger in the car at the time. He sustained significant injuries in the accident, incurring economic damages in excess of $60,000. North Pacific paid $25,000 in PIP benefits to Donald or on his behalf. As North Pacific interpreted the policy, Bonnie's liability coverage for the accident was $25,000, not $60,000, because Donald, who was both a family member and insured under the policy, was the person injured in the accident. Therefore, although Bonnie caused the accident and Donald's economic damages were over $60,000, Donald was entitled to receive only $25,000 under the policy's liability coverage. Moreover, North Pacific contended that Donald was not entitled to any further payments because, according to the policy, the $25,000 in PIP benefits was "to be applied in reduction of the amount of damages" due on the liability coverage. North Pacific argued, as a result, that the total amount of money that it was required to pay to Donald or on his behalf was $25,000. North Pacific filed an action for a declaration to that effect.

Defendants filed an answer and a counterclaim in the action. They argued that the declaration page for the policy stated that the maximum liability coverage was $60,000 and that any policy provision that purported to reduce that figure was ambiguous and unenforceable. They also argued that "[t]o the extent that the policy * * * provides for reimbursement of PIP payments, that provision is unenforceable as contrary to the provisions of ORS 742.544." ORS 742.544 provides that PIP providers can be reimbursed for money that they have paid in PIP benefits only to the extent that the "total amount of benefits paid" to an insured "exceeds the economic damages as defined in ORS 18.560 suffered by that person." Thus, according to defendants, even if the liability provisions of the policy were interpreted to provide a maximum of $25,000 in coverage, the PIP benefits paid to Donald could not be applied to reduce the amount owed on the liability coverage, because the reduction would cause Donald to receive less than the full amount of his economic damages, which exceeded $60,000. Both parties moved for summary judgment.

The trial court granted summary judgment to North Pacific, declaring that the policy provisions were enforceable and that North Pacific's interpretation of them was correct. Although the policy limited liability coverage for one person in any one accident to $60,000, the trial court noted that

> "[a]n insurance company can legally exclude a specific category of persons from the higher coverage limits of a policy as long as it provides the minimum liability coverage required by the financial responsibility law. *Collins v. Farmers [Ins. Co.*, 312 Or 337, 346, 822 P2d 1146] (1991)."

The trial court concluded that the policy unambiguously limited the payment of liability damages to people insured under it to $25,000, the minimum amount required by the Oregon financial responsibility law. *See* ORS 806.070(2)(a). Because Donald was insured under the policy, his coverage was so limited. The trial court also concluded that ORS 742.544 did not apply to the reduction of PIP benefits to Donald because the statute spoke of "reimbursement" rather than "reduction." As a result, the policy provision that reduced the liability damages by the amount of PIP benefits paid to or on behalf of Donald was enforceable. Thus, the $25,000 in liability damages otherwise payable to Donald was reduced by the $25,000 in PIP benefits that had already been paid.

■    Defendants assign error on appeal to both of the trial court's conclusions. Because we agree with the trial court's analysis, we affirm without discussion its conclusion that the provision limiting liability coverage to $25,000 for those insured under the policy is both enforceable and applicable to Donald.

Turning to the second assignment of error, the issue is whether ORS 742.544 applies to the policy provision that provides that any PIP benefits paid to, or on behalf of, an insured "shall be applied in reduction of the amount of damages which, because of **bodily injury** sustained in the same accident, the **insured** may be entitled to recover from us for bodily injury liability insurance." (Emphasis in original.) To resolve that issue, we must determine the legislature's intent in passing ORS 742.544. We do that by examining the text of the statute in context, turning to legislative history only if we cannot determine the meaning of the statute from that

review. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

ORS 742.544 provides:

"(1)  *A provider of personal injury protection benefits* shall be *reimbursed* for personal injury protection payments made on behalf of any person *only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 18.560 suffered by that person.* As used in this section, 'total amount of benefits' means the amount of money recovered by a person from:

"(a)  Applicable underinsured motorist benefits described in ORS 742.502(2);

"(b)  Liability insurance coverage available to the person receiving the personal injury protection benefits from other parties to the accident;

"(c)  Personal injury protection payments; and

"(d)  Any other payments by or on behalf of the party whose fault caused the damages;

"(2)  Nothing in this section requires a person to repay more than the amount of personal injury protection benefits actually received."

(Emphasis supplied.) Defendants argue that the trial court erred when it concluded that the statute does not apply to situations in which the insurance company that pays the PIP benefits also pays the liability damages. We agree. The statute refers to "[a] provider of personal injury protection benefits" and outlines precisely when and to what extent that provider can recover PIP benefits it pays to, or on behalf of, an injured insured. It does not distinguish between PIP providers that provide the relevant liability insurance coverage and those that do not. In this case, North Pacific is a PIP provider that provided PIP benefits to Donald. ORS 742.544 identifies the factors relevant to the determination whether North Pacific will be able to recover those payments.

That reading of the statute is consistent with its apparent purpose, which is to reverse the priority between injured insureds and their PIP providers. Before the enactment of ORS 742.544, a PIP provider was entitled to recover the amount of money that it paid in PIP benefits to an injured

insured *before* the insured received any benefits from the relevant liability insurance. *See Babb v. Mid-Century Ins. Co.*, 110 Or App 67, 71, 821 P2d 424 (1991), *rev den* 313 Or 209 (1992). By enacting ORS 742.544, the legislature reversed the order of recovery in an attempt to protect, to the extent possible, an injured insured's ability to recover his or her economic damages. Under the statute, the PIP provider is entitled to recover money it has paid in PIP benefits "only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 18.560" suffered by the insured. ORS 742.544. Thus, an injured insured's right to retain benefits prevails over the PIP provider's right to recover money paid in the form of PIP benefits. Given that the intent of the statute is to protect injured insureds and that the statute refers very broadly to "[a] provider of [PIP] benefits," it makes sense that it protect *all* injured insureds and apply to *all* PIP providers.

■    Despite that, North Pacific argues that the legislature's use of the term "reimbursement" in ORS 742.544 requires that an injured insured whose PIP provider, coincidently, provides the relevant liability insurance be denied the protection afforded by ORS 742.544 because one provider cannot reimburse itself. North Pacific's analysis is flawed in two respects. First, even if we were to agree that, under the statute, the liability provider reimburses the PIP provider, we disagree with the premise that one provider cannot reimburse itself. Reimburse means "to make *restoration* or payment of an equivalent to." *Webster's Third New International Dictionary* 1914 (unabridged ed 1993) (emphasis supplied). Thus, ORS 742.544 can be understood to specify when and to what extent the amount of money paid in PIP benefits to the injured insured will be *restored* to the PIP provider. Whether the funds are restored by an offset, reduction or payment is irrelevant. The focus of the statute is on *when* the funds will be restored, not on *how* they will be restored or by *whom*. One provider can restore funds that it has paid out in PIP benefits by offsetting the appropriate amount from the funds it provides under a liability policy.[1]

---

[1] North Pacific cites ORS 742.542 in support of its argument that the word "reimbursement" controls the meaning of ORS 742.544. ORS 742.542 provides:

Second, we disagree with North Pacific's premise that the liability provider "reimburses" the PIP provider. The statute does not explicitly state who will reimburse the PIP provider; it merely states that the PIP provider will be reimbursed when the "total amount of benefits paid" by the injured insured exceed the injured insured's economic damages. In calculating the total amount of benefits, four different sources of benefits for the insured are considered. ORS 742.544(1). Technically, the injured insured has "recovered" those benefits and it is from those benefits that the PIP provider is reimbursed. Thus, technically, it is the injured insured who reimburses the PIP provider. As a practical matter, the liability provider may actually reimburse the PIP provider, but that practical reality is unimportant in understanding the legislature's intent in drafting the statute.[2] We conclude that the use of the word "reimbursed" in the statute does not change our understanding of it.[3] ORS 742.544

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be *applied in reduction* of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be *applied in reduction* of the uninsured or underinsured motorist coverage policy limits."

North Pacific argues that, if the legislature had wanted ORS 742.544 to apply to PIP providers that also provide the relevant liability insurance, it would have included the phrase "applied in reduction of * * * damages" in the statute to accomplish that. The trial court agreed with that argument. We conclude that the argument is without merit. That the legislature used the words "applied in reduction of * * * damages" in ORS 742.542 to refer to a situation where, by definition, there will always be only one insurance provider does not mean that the legislature had to use those words in ORS 742.544 to ensure that the latter statute would apply in situations involving single insurance providers. In changing the priority of payment from PIP providers to injured insureds, the legislature was free to choose language that encompassed both single- and dual-provider situations, and it did so.

[2] The statute confirms that understanding by providing that "[n]othing [in it] requires a person to repay more than the amount of personal injury protection benefits actually received." That language indicates that the legislature understood that the person who receives PIP benefits is the person from whom the reimbursement would come, no matter how the funds are actually handled by the parties. Hence, the offset claimed by North Pacific under its policy is a reimbursement from Donald to North Pacific of the amount that he received in PIP benefits from it.

[3] Even if we concluded that the use of the word "reimbursed" made the statute ambiguous, the legislative history of ORS 742.544 supports our understanding of it. ORS 742.544 was passed in 1993. The issue of PIP reimbursement first arose in the 1993 legislative session with the introduction of SB 366, which provided, in part:

"A provider of personal injury protection benefits shall not be *reimbursed* for payments made on behalf of its own insured to the extent that the total

applies to the present case. To the extent that the policy conflicts with the statute, it is unenforceable.

amount of damages suffered by the insured in the accident exceeds the policy limits of: (a) Uninsured motorist coverage; (b) Underinsured motorist coverage; and (c) Liability insurance coverage available to the insured from other parties to the accident."

(Emphasis supplied.) SB 366 proposed to repeal ORS 742.542, which deals with PIP reimbursement and uninsured motorist coverage. *See* note 1 above. Senator Rasmussen explained the purpose of the bill to the other members of the Senate:

"Currently, in the state of Oregon, case law from the appellate courts tells us that you are better off if you are hit by an uninsured driver than if you are hit by another insured driver with respect to PIP benefits. And that is for this reason: if you are hit by an uninsured driver your PIP benefits will pay your medical bills but if your damages exceed the combination of the policies available to you under your [uninsured motorist] and your PIP, then the PIP carrier does not receive a *reimbursement*. So, you are well served by your policies in that situation. * * * That is not true, however, if you are hit by an insured driver. The first person or entity which recovers if you are hit by an insured driver is your PIP carrier. Now bear in mind that that places the PIP carrier above you in the recovery line. * * * Now as far as I'm concerned, from a simple policy stand point, it ought to be the policy of this state * * * that if you pay your premium dollars for your PIP benefit, you ought to receive that benefit first. That is what this law does. It says simply this: * * * If your damages exceed the policy limits available to you then PIP is not *off-set* from your ability to collect from the other policies available, typically the other driver's insurance. * * * This is a good consumer bill. Let's face it, when it comes to automobile insurance, most people do not understand what they are buying and I suspect that most people would be very surprised to find out that when they have purchased that benefit they stand number two in line for receiving it. This is a good bill, it deserves your support today and I urge an aye vote."

*Senate Floor Debate on SB 366*, 67th Or Legis Ass'y, April 29, 1993 (emphasis supplied). The bill was passed by the Senate and sent to the House. On July 7, 1993, the Senate Committee on Business, Housing and Consumer Affairs amended HB 3484 to include a revised version of SB 366 in it. The text of that version was identical to that which ultimately became ORS 742.544, except that it did not refer to economic damages and it included a reference to uninsured motorist coverage. The House refused to concur in the amendments and HB 3484 was referred to a conference committee. On July 30, 1993, the conference committee amended the bill to add language on economic damages and to eliminate the reference to uninsured motorist coverage. Senator Rasmussen said to the committee, "As I understand [the amended provision,] we are overruling [*Babb v. Mid-Century Ins. Co.*, 110 Or App 67, 821 P2d 424 (1991), *rev den* 313 Or 209 (1992),] in so far as an injured person has suffered economic damages, which are some of the amendments that we are doing today." He asked Kathleen Eymann of the Oregon Trial Lawyers Association to explain the provision. She responded: "What it basically says is the money from the liability carrier will first go to pay the economic damages of the injured person, then if there is more money left over * * * that will be used to reimburse PIP." Senator Rasmussen responded, "Alright, that makes sense to me then. Okay." With the removal of the reference to uninsured motorist coverage, Senator Rasmussen noted that ORS 742.542, which he said also addressed "reimbursement" of PIP benefits, was not affected by the bill. The conference committee agreed with the amendments, and both houses passed the bill. It became law on August 23, 1993.

Applying the statute to this case, we conclude that North Pacific cannot offset the PIP payments made to Donald from the liability payments it owes him. Under ORS 742.544, North Pacific, as a PIP provider, is entitled to be reimbursed for the PIP payments it made to or on behalf of Donald "to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 18.560 suffered by" Donald. *See* ORS 742.544. It is undisputed that Donald's economic damages exceed $60,000. Therefore, North Pacific is entitled to reimbursement of the $25,000 in PIP payments only if the total amount of benefits paid to Donald exceeds $60,000. In calculating the benefits paid, we note that there is no indication in the record that Donald had underinsured motorist benefits or that there were any "other payments by or on behalf of the party whose fault caused the damages." *See* ORS 742.544(1)(a), (d). Thus, the total amount of benefits in this case equals $50,000: $25,000 in PIP benefits and $25,000 in liability insurance coverage available to Donald from other parties to the accident, namely Bonnie.[4] *See* ORS 742.544(b), (c). Because, in this case, the total amount of benefits does not exceed Donald's economic damages, North Pacific is not entitled to reimbursement of the PIP benefits that it paid to Donald or on his behalf. The trial court erred,

---

That history demonstrates that the legislature intended to place the injured insured's recovery of economic damages ahead of a PIP provider's recovery of the PIP benefits that it had paid to the insured. While the legislature used the term "reimbursement" in the statute, it clearly did not intend for that term to have the limited meaning that North Pacific ascribes to it. Not only did the people who discussed the provision use the word "reimbursement" interchangeably with "off-set," but, originally, the provision was intended to apply to insureds who were injured by *uninsured* motorists. Thus, the legislature necessarily intended the reference to the reimbursement of PIP benefits to apply to a single payor of PIP and liability benefits, such as North Pacific. Otherwise, the legislature would not have used that phrase in the draft version of ORS 742.544 to refer to the recovery of PIP benefits in situations involving uninsured motorists, which always involve a single payor that provides both PIP and liability coverage to its insured. Moreover, legislators and others who discussed the provision noted several times that the law was intended to prevent an injured insured from having to "reimburse" the insured's PIP provider if, in doing so, the insured received less than the full measure of the insured's economic damages. Given that legislative history, North Pacific's interpretation of the statute is untenable. The statute was intended to apply, and does apply, to all PIP providers and not just those PIP providers who, coincidently, do not also provide the relevant liability coverage.

[4] North Pacific does not dispute that Bonnie is another party to the accident and that she is liable to Donald for the maximum of her liability coverage, which is $25,000.

therefore, in granting plaintiff's motion for summary judgment on that issue and in denying defendants' cross-motion on it.

The concurrence agrees that the trial court erred in granting plaintiff's motion for summary judgment on the application of the PIP benefits, but for different reasons. It concludes that the effect of the provision that purports to limit North Pacific's liability for PIP benefits is to "reduce liability limits below the minimum, $25,000, required by the financial responsibility law, ORS 806.070(2)(a)." 153 Or App at 345. The concurrence's position contradicts the express provisions of the insurance policy. The section of the policy on liability coverage provides liability coverage of $60,000 for one person in any one accident unless the injured person is insured under the policy, in which case the liability coverage is limited to the minimum required by the financial responsibility law. On its face, that section complies with ORS 806.070(2)(a). The provision in dispute addresses the PIP benefits provided under the policy. It states that an insured has $25,000 in PIP unless North Pacific provides the relevant liability coverage, in which case North Pacific limits its "liability for [PIP] benefits" by reducing the amount of damages the insured "may be entitled to recover from us for bodily injury liability insurance." Placed in context, it is evident that, although it achieves it by reducing the amount paid to the insured after liability is established, the provision is intended to reduce the amount of *PIP* provided. It does not have any effect on North Pacific's compliance with ORS 806.070(2)(a).

Faced with nearly identical facts, the Supreme Court reached the same conclusion in *Edwards v. Bonneville Auto. Ins. Co.*, 299 Or 119, 121, 699 P2d 670 (1985). The defendant in *Edwards* had issued a motor vehicle insurance policy to a third party, Nilson. That policy provided for PIP coverage and for $15,000 of liability coverage, which was the minimum then required under Oregon law. It also had a provision that stated that

"'[a]ny payments made by the Company under this insurance either as [PIP] benefits to or on behalf of [any] injured person or as reimbursement, pursuant to ORS 743.800 to*

743.835 inclusive, to any other insurer or organization for such benefits paid by it *shall be applied in reduction of the amount of damages which, because of bodily injury sustained in the same accident, such injured person may be entitled to recover from the Company or any other insurer under insurance afforded for either bodily injury liability* or protection against uninsured motorists.' "

*Id.* at 121 (emphasis supplied). While that policy was in force, Nilson was in a single-car accident. The plaintiff was a passenger in the car and was injured. Because the plaintiff was a passenger in the car, the defendant was both the PIP provider and the liability insurer. The defendant paid the plaintiff $15,000 under the policy. It took the legal position that it was

"entitled to set off personal injury protection payments against bodily injury liability coverage so that the payment of $15,000 in this case represents all of the personal injury protection payments requested by the plaintiff and the remainder of the bodily injury liability coverage available under Mr. Nilson's policy."

*Id.* at 122. The trial court ruled in favor of the defendant and the plaintiff appealed.

The Supreme Court stated that the issue in the case was whether, "because of a provision in the policy, the defendant motor vehicle liability insurer is entitled to an offset against its liability policy limits for the sum it has paid to an injured person as [PIP] benefits." *Id.* at 121 (footnotes omitted). It summarized the relevant provision as follows:

"Any PIP benefits payments made by the company to any insured person shall be applied to reduce the amount of damages which, because of bodily injury, the injured person may be entitled to recover from the company under insurance afforded for bodily injury."

*Id.* at 125. It continued:

"The parties agree that plaintiff was an insured person and that the company was obligated to pay to him PIP benefits. They agree that he was entitled to recover damages for the bodily injury from Nilson and thereby, although indirectly, from the company. If we assume, for the sake of argument, that plaintiff was entitled to recover damages from Nilson

in an amount greater than the sum of $26,000 [the amount of PIP benefits + amount of liability coverage], nevertheless, he was entitled at the most to have the company pay only $15,000 under its liability coverage. The policy provision gives the company the right to apply PIP benefits payments in reduction of that amount, even though the company charged a premium for each coverage. It follows that the policy requires the company to pay $11,000 for PIP benefits and allows the company to reduce the amount payable under its liability coverage in that amount. That means that the payment of $15,000 exhausts the company's obligation under the policy."

*Id*. at 125-26.

In substance, the policy provision in *Edwards* is identical to the provision addressed in this case, and the Supreme Court viewed the provision the same way that we do today. Although the court spoke of reducing "the amount payable under its liability coverage" by the amount of PIP benefits paid to the plaintiff, it understood that the plaintiff was entitled "at the most to have the company pay" the limit of its liability coverage. *Id*. at 126. In other words, although the provision spoke of reducing liability coverage, the court understood that the provision had the effect of reducing PIP coverage.

■ Ultimately, the court in *Edwards* concluded that the insurance company could reduce PIP in that manner. However, as we have already explained, that conclusion is no longer tenable under ORS 742.544. Under ORS 742.544, a PIP provider can be reimbursed "only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 18.560 suffered by" the injured insured. Because, in this case, the total amount of benefits does not exceed Donald's economic damages, North Pacific is not entitled to reimbursement of the PIP benefits that it paid to Donald or on his behalf. The trial court erred, therefore, in granting plaintiff's motion for summary judgment on that issue and in denying defendants' cross-motion on it.

Summary judgment on reimbursement of PIP benefits reversed and remanded; otherwise affirmed.

**WARREN, P. J.,** concurring.

I agree with the majority and the trial court that North Pacific's policy may and does limit its liability limits to the statutory minimum of $25,000 with respect to plaintiff. I do not agree that the balance of the majority opinion's analysis is correct or necessary.

The trial court was correct that ORS 742.544 does not apply because that statute deals with reimbursement. Here, there was no reimbursement but a *pro tanto* reduction of available limits based on payments made under PIP. The policy provides:

"Any payments made by us under this insurance to an **insured** shall be applied in reduction of the amount of damages which, because of **bodily injury** sustained in the same accident, the **insured** may be entitled to recover from us for bodily injury liability insurance." (Emphasis in original.)

The effect of this provision is to reduce liability limits below the minimum, $25,000, required by the financial responsibility law, ORS 806.070(2)(a). That is impermissible. *See Collins v. Farmers Ins. Co.,* 312 Or 337, 346, 822 P2d 1146 (1991) (holding that insurance companies may exclude some persons from higher coverage limits so long as the policy provides the minimum coverage required by the financial responsibility statutes); *United Services Auto. Ass'n v. Reilly,* 122 Or App 459, 463, 858 P2d 457 (1993) (when an insurance policy is obtained to satisfy financial responsibility laws, the policy must provide the coverage required by ORS 806.070).

The majority is correct that the total available insurance to plaintiff is $50,000 ($25,000 in PIP already paid and $25,000 in liability not yet recovered), not, however, because of an unlawful intra-company reimbursement, but because the enforcement of the policy would reduce liability limits below the statutory minimum.[1]

---

[1] The majority opinion concludes that my position was rejected by the Supreme Court in *Edwards v. Bonneville Auto. Ins. Co.,* 299 Or 119, 699 P2d 670 (1985). However, in *Edwards,* the plaintiff did not, and could not, make the same argument. The briefs before the court in *Edwards* did not raise the argument because the facts of that case foreclosed it. There, the insurance company first paid to the plaintiff its maximum amount of liability under its liability insurance policy. *Id.* at

Because I conclude that this case is not covered by the reimbursement statute, ORS 742.544 is not implicated. The majority's discussion of that issue is unnecessary. The policy provisions, which reduce liability coverage below the minimum allowed by statute, are impermissible. I concur with the majority's result, however, that total coverage in this case is $50,000.

---

122. Thus, the court was not presented with the situation where PIP benefits were used to reduce the amount of liability limits below those that were required by law. Here, the PIP benefits were paid first and North Pacific then argued that it had satisfied its liability limits. However, that stance reduces North Pacific's liability coverage below that allowed by law.