Argued and submitted June 8, reversed and remanded November 1, 2006

Mario V. GAUCIN,
*Appellant,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
a foreign business corporation,
*Respondent.*

04-CV-0279-ST; A128462

146 P3d 370

Joel DeVore argued the cause for appellant. On the opening brief were Timothy L. Williams and Roy Dwyer, P.C. With him on the reply brief were Luvaas Cobb and Timothy L. Williams.

Thomas M. Christ argued the cause for respondent. With him on the brief was Cosgrave Vergeer Kester LLP.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

_____

* Landau, J., *vice* Ceniceros, S. J.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In this case, we are called on to decide whether plaintiff must reimburse defendant, his insurer, for the personal injury protection (PIP) benefits that defendant paid to plaintiff, to the extent that plaintiff also received other benefits that, in total, exceeded his economic damages. The trial court ruled that defendant was entitled to reimbursement by virtue of ORS 742.544.[1] Plaintiff argues that ORS 742.544 does not confer on insurers an entitlement to reimbursement of PIP benefits; rather, according to plaintiff, the statute limits only the amount of reimbursement that might be available to insurers under other statutes. We agree with plaintiff and therefore reverse and remand.

The relevant facts are not disputed. Plaintiff held an insurance policy issued by defendant with $25,000 in PIP coverage and $50,000 in underinsured motorist coverage (UIM). He was injured in an automobile accident with another car and incurred at least $55,484 in economic damages. The other motorist, who was at fault, was underinsured; his policy had a $25,000 liability limit.

Plaintiff filed a PIP claim with defendant and received the total $25,000 limit under his policy. He also settled with the underinsured motorist's insurer for the $25,000 liability policy limit, leaving him with at least $5,484 uncompensated economic damages and an unspecified amount of uncompensated noneconomic damages. Plaintiff then filed a claim with defendant for $50,000 in UIM benefits.

Defendant tendered $50,000 in UIM to plaintiff on the condition that plaintiff reimburse defendant for the PIP payment it previously had made, asserting that reimbursement was authorized under ORS 742.544(1). Plaintiff then filed this action seeking a declaratory judgment that defendant was not entitled to a reimbursement of PIP payments. Specifically, plaintiff asked the trial court to declare:

---

[1] ORS 742.544(1) provides, in relevant part: "A provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person only to the extent that the total amount of benefits paid exceeds the economic damages * * * suffered by that person."

"a. That Defendant is not entitled to PIP reimbursement under ORS 742.544;

"b. That the effect of PIP money paid by Defendant falls under the statutory set-off scheme set out in ORS 742.542;[2] and

"c. That the reimbursement scheme of ORS 742.544 does not apply to the set-off scheme set out in ORS 742.542."

Both parties submitted motions for summary judgment. The trial court granted defendant's. The court explained its decision as involving two steps. The first led to the conclusion that, under ORS 742.542, plaintiff was *initially* entitled to receive up to $75,000: $25,000 from the tortfeasor, $25,000 from defendant in PIP benefits, and $25,000 from defendant in UIM benefits. In the vernacular of insurance law, that outcome recognized plaintiff's right to "stack" his UIM and PIP benefits.[3] Plaintiff does not contest that part of the court's decision.[4]

---

[2] ORS 742.542 provides:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits."

[3] The trial court first applied ORS 742.502(2)(a), under which UIM benefits equal UIM coverage benefits (here, $50,000) "less the amount recovered from other motor vehicle liability insurance policies" (here, the $25,000 recovered from the tortfeasor's insurer). *See Bergmann v. Hutton*, 337 Or 596, 601, 101 P3d 353 (2004). That yielded UIM coverage of $25,000. The court then applied ORS 742.542. According to the trial court, that statute permits plaintiff to "stack" his UIM benefits and PIP, that is, to receive from defendant the sum of his UIM benefits ($25,000, as described above) and PIP policy limits ($25,000), so long as that sum plus the damages received from the tortfeasor was equal to or less than his damages. *See Yokum v. Farmers Ins. Co.*, 117 Or App 546, 549 n 1, 844 P2d 937, *rev den*, 317 Or 272 (1993) (noting that according to then-current version of ORS 742.542, a plaintiff could "stack" PIP and *un*insured motorist benefits but not PIP and *under*insured motorist benefits); ORS 742.542 (1997) (amending ORS 742.542 (1993) to allow plaintiffs with UIM coverage to "stack" on same terms as plaintiffs with UM coverage).

[4] Plaintiff does assert that the court erred in not allowing him to stack UIM and PIP, but, on closer examination, it is clear that what plaintiff is actually asserting is that the court erred in applying ORS 742.544 in such a way as to *negate the effect* of stacking.

■ Rather, he contests the second step. After ruling that plaintiff can "stack" PIP and UIM under ORS 742.542 and receive $75,000, the court then ruled that defendant could negate the effect of that stacking through application of ORS 742.544, which entitles defendant to be *reimbursed* "to the extent that the total amount of benefits paid exceeds the economic damages * * * suffered by that person." Plaintiff argues, among other things, that ORS 742.544 does not entitle the insurer to reimbursement; it simply specifies that, if some other statute provides entitlement to reimbursement, that reimbursement is limited so as to protect a plaintiff's full recovery of economic damages. We agree.[5]

The crucial language is in ORS 742.544(1): "A provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person only to the extent that the total amount of benefits paid exceeds the economic damages * * * suffered by that person." The parties agree that the provision limits an insurer's reimbursement when an insured's economic losses exceed the sum of PIP and any payment from the tortfeasor. The parties disagree about whether the provision (1) independently authorizes PIP insurers to seek reimbursement, or (2) simply imposes a limitation when the insurer seeks reimbursement under other authorizing statutes.

Defendant would paraphrase the language as follows: "A provider of PIP benefits *shall* be reimbursed for PIP payments, * * * *but* only to the extent that the total amount of benefits paid exceeds * * * economic damages." In other words, defendant reads the statute to contain both a blanket entitlement to PIP reimbursement and a limitation on the amount of that reimbursement. It focuses on the word "shall." Defendant further argues that the statute's authorization is not conditioned on notice or other procedural requirements because no such requirements appear in that section of the statute, and the statute should be read in isolation from other, related provisions.

---

[5] The motive behind this dispute lies in a significant difference between the reduction scheme in ORS 742.542 and the reimbursement scheme in ORS 742.544. The former would permit plaintiff to fully recover all of his damages; it is referred to as a "make whole" provision, while the latter permits recovery of only economic damages, and is called a "make half" provision.

Plaintiff, on the other hand, argues that the operative phrase is *"only to the extent* that the total amount of benefits paid exceeds the economic damages," and that the sole import of the provision is to deny any PIP reimbursement to the insurer until after the insured has been compensated for economic damages. Plaintiff explains that three other statutes, ORS 742.534, ORS 742.536, and ORS 742.538, are the only sources of authorization for PIP reimbursement. ORS 742.534, the "interinsurer reimbursement" statute, permits an insurer that has paid PIP benefits to an insured to seek reimbursement from the tortfeasor's insurer. The PIP provider must request reimbursement from the appropriate insurer and may not elect recovery by lien against the PIP insured. Alternatively, under ORS 742.536, the "lien" statute, a PIP provider may elect to recover PIP benefits by placing a lien on the PIP insured's recovery of damages from the tortfeasor's insurer. In that case, the PIP insurer must give notice of the lien against the insured to the insured and the tortfeasor. ORS 742.536(2). Otherwise, under ORS 742.538, the "subrogation" option, where recovery under ORS 742.534 is unavailable and where the insurer has not elected recovery by lien under ORS 742.536, the PIP insurer may request the PIP insured to take action to recover damages from the tortfeasor and take its reimbursement from the insured's recovery. ORS 742.538(4). In other words, ORS 742.538 subrogates the PIP insurer to the rights of its insured to the extent of PIP benefits paid.

Plaintiff argues that ORS 742.544(1) acts only as a mathematical limitation on the amount of PIP recovery that an insurer can obtain under any of those three authorizations. Once the PIP provider has invoked either ORS 742.534, ORS 742.536, or ORS 742.538, ORS 742.544(2) will guarantee that the insurer receives PIP reimbursement only for the surplus remaining after the insured has recovered his or her economic damages.

As an initial matter, we cannot agree with defendant that ORS 742.544 is unambiguous because it uses the mandatory term "shall": "A provider of personal injury protection benefits *shall* be reimbursed * * * [subject to limitations]." (Emphasis added.) "Shall" might inflect the reimbursement, as defendant argues, or it might inflect the limitation, as

plaintiff maintains. A familiar parallel example would be the statement, "Employees shall be entitled to overtime for only a maximum of $500 per month." That statement does not necessarily create an entitlement to overtime and simultaneously limit it to $500; particularly in the context of a regulatory scheme containing explicit prerequisites to receipt of overtime (certification by a supervisor of time worked, a certain level of seniority, etc.), the statement quite plausibly—indeed, quite probably—means that the overtime allowed to an otherwise qualified employee cannot exceed the specified amount.

■      That is the situation here. ORS 742.544(1) is in the same part of the insurance code—the part regulating "Motor Vehicle Liability Insurance," ORS 742.477 through 742.580—as the specific reimbursement provisions, ORS 742.534, ORS 742.536, and ORS 742.538. If ORS 742.544 were meant to serve as an independent entitlement to PIP reimbursement, it would impermissibly render the various authorization avenues described in ORS 742.534, ORS 742.536, and ORS 742.538 mere surplusage. In other words, by simply invoking ORS 742.544(1), a PIP insurer would escape the notice or procedural requirements of the other authorizing statutes in order to obtain PIP reimbursement. "As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005); ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

An amendment to ORS 742.534 contained in the same bill that generated ORS 742.544, House Bill (HB) 3484 (1993), provides additional context. HB 3484 amended ORS 742.534, the "interinsurer reimbursement" statute, by adding the preface, "Except as provided in section 9 of this 1993 Act," which, when codified, became, "Except as provided in ORS 742.544[.]" Or Laws 1993, ch 709, § 9. The remainder of the statute, setting out the authorization and requirements for interinsurer PIP reimbursement, was unchanged.

Defendant's argument does not account for that amendment: If ORS 742.544(1) were intended as an independent authorization for PIP reimbursement, then the

means to obtain PIP reimbursement in ORS 742.534 would be completely supplanted by the authorization in ORS 742.544. In that case, ORS 742.534's interinsurer authorization for PIP reimbursement, which includes a reference to another PIP reimbursement authorization in ORS 742.536, would be redundant; the exception introduced by the 1993 amendment would swallow the whole. Moreover, if ORS 742.544(1) was intended to provide a blanket authorization for PIP reimbursement, it would trump ORS 742.534 *whether or not* the "except as provided" phrase were added. For that reason, interpreting ORS 742.544(1) as a limitation, rather than an authorization, is logical.

The legislative record comports with that interpretation. In order to understand the purpose of ORS 742.544, it is useful to note certain legal developments that led to its drafting. At the time ORS 742.544 was enacted (as now), ORS 742.542 provided that an insured's claim for UM could be reduced by the amount of PIP recovery, but where the insured's damages exceed the sum of UM and PIP, the PIP insured could "stack" the benefits in order to make a fuller recovery.

However, before ORS 742.544 was enacted, when a PIP insured was injured by an *insured* tortfeasor, Oregon law enabled PIP insurers to demand PIP reimbursement from the insured, even when the recovery from the tortfeasor did not make the PIP insured whole. *Babb v. Mid-Century Ins. Co.*, 110 Or App 67, 821 P2d 424 (1991), *rev den*, 313 Or 209 (1992) (construing ORS 742.534 to produce that result).

Proponents of the new statute aimed to permit PIP insureds to retain PIP benefits in addition to payments from the tortfeasor, where the PIP insured's losses exceeded available benefits. ORS 742.544 began as Senate Bill (SB) 366 (1993). The author of SB 366, Senator Karsten Rasmussen, explained that the new provision would guarantee that any PIP insured who was injured by an uninsured motorist would not be required to reimburse the PIP insurer unless the insured received compensation for his or her economic damages. Only surplus PIP benefits would become subject to reclamation:

> "[F]rom a simple policy standpoint, it ought to be the policy of the state * * * that if you pay your PIP benefit, you ought to receive that benefit first * * *. I suspect that most people would be very surprised to find out that when they have purchased that benefit they stand number two in line for receiving it."

Tape Recording, Senate Floor Session, SB 366, Apr 29, 1993, Tape 61, Side A (statement of Sen Rasmussen). Thus, the purpose of the bill was to prioritize the PIP insured, allowing reimbursement only after the insured received compensation. Senator Rasmussen did not characterize the bill as yet another independent PIP reimbursement authorization for insurers.

Over the course of deliberations, proposed versions of the bill contained express provisions that would have removed references to authorizing PIP reimbursement in ORS 742.534, ORS 742.536, and ORS 742.538, so as to centralize PIP reimbursement authorization in the new statute. *E.g.*, Testimony, Senate Business, Housing, and Consumer Affairs Committee, SB 366-3, Apr 21, 1993, Ex C (Proposed Amendments to Senate Bill 366). Those proposed amendments were rejected. As a result, the existing PIP reimbursement authorizations in ORS 742.534, ORS 742.536, and ORS 742.538 remained in those statutes and now coexist with the provisions in ORS 742.544. Testimony, Conference Committee, HB 3484,[6] July 30, 1993, Ex B (Hand-engrossed Amendments to House Bill 3484) (illustrating final version of text). That decision suggests that the drafters deliberately designed the bill so that it would *not* centralize authorization of PIP reimbursement, leaving PIP insurers to continue to rely on the authorization provisions of ORS 742.534, ORS 742.536, and ORS 742.538 in order to perfect their claims.

The bill was further revised in conference committee, where certain notice provisions were reportedly rejected. A principal drafter of HB 3484, Kathleen Eyeman, then Executive Director of the Oregon Trial Lawyers Association, explained, "We took out some notice provisions [in HB 3484], so the *notice provisions under existing law will be in effect.*"

---

[6] After SB 366 was approved in the Senate, a revised version of the bill was amended and became HB 3484.

Tape Recording, HB 3484 Conference Committee, HB 3484, June 30, 1993, Tape 98, Side A (statement of Kathleen Eyeman (emphasis added)). We understand the phrase "notice provisions under existing law" to mean the requirements that PIP insurers (or insureds) are required to meet under ORS 742.534, ORS 742.536, or ORS 742.538 to make a claim for PIP reimbursement. That remark, and the fact that the machinery for invoking PIP reimbursement in ORS 742.534, ORS 742.536, and ORS 742.538 was left in place, again leads to the conclusion that the legislature did not intend ORS 742.544(1) to serve as a summary authorization for PIP insurers to seek reimbursement apart from the procedures set forth in ORS 742.534, ORS 742.536, and ORS 742.538.

Finally, statements about the effect of the final version of the bill confirm that the bill was designed to assign the priority of claims to PIP benefits to favor remunerating the insured to the amount of his or her economic damages, rather than to assist PIP insurers in their own reimbursement. Senator Rasmussen, who carried the initial version of the bill in the Senate, summarized the effect of the bill after it had been amended in House, Senate, and conference committees: "As I understand [the amended provision,] we are overruling [*Babb*, 110 Or App 67] in so far as an injured person has suffered economic damages[.]" *North Pacific Ins. Co. v. Hamilton*, 153 Or App 332, 339 n 3, 957 P2d 165 (1998), *rev'd in part*, 332 Or 20, 22 P3d 739 (2001) (bracketed material in original).[7] *Babb* had interpreted ORS 742.534 to provide for the PIP insurer's reimbursement even when the insured had not recovered his or her losses. 110 Or App at 71. Thus, "overruling" *Babb* in HB 3484 simply meant that, under the new provision, PIP insurers would be outranked by insureds who have outstanding economic losses. Indeed, because the bill also left ORS 742.534 in place and added the phrase "[e]xcept as provided in ORS 742.544," we understand ORS 742.544 as prioritizing the compensation of PIP insureds within the existing authorization framework. As Kathleen Eyeman confirmed, "What it basically says is the money from the liability

---

[7] Because the audiotape of the relevant proceedings of the HB 3484 Conference Committee is inaccessible, we instead quote from previously transcribed portions of the tape published in *North Pacific Ins. Co.*, 153 Or App at 339.

carrier will first go to pay the economic damages of the injured person, then if there is more money left over * * * that will be used to reimburse PIP." *Id.* HB 3484 was designed to allow PIP insureds to retain PIP benefits in addition to payments from the tortfeasor, up to the PIP insured's economic losses, where PIP reimbursement was otherwise authorized.

In sum, ORS 742.544 does not independently authorize PIP insurance reimbursement. Rather, it (1) prioritizes the PIP insured as the recipient of PIP benefits up to the amount of the insured's economic damages, even where the insured has received payment from the tortfeasor, and (2) limits a PIP insurer's reimbursement to the amount of PIP benefits that exceed the PIP insured's economic damages as defined in the statute. The court erred in granting defendant's motion for summary judgment on the basis that ORS 742.544(1) entitles defendant to PIP reimbursement.

Reversed and remanded.