On appellant and respondent's joint petition for reconsideration filed January 16, reconsideration allowed; former opinion (217 Or App 83, 174 P3d 1058 (2007)) withdrawn; reversed and remanded with instructions to enter judgment in favor of defendant April 16, petition for review denied July 2, 2008 (345 Or 94)

# FARMERS INSURANCE COMPANY OF OREGON,
*Plaintiff-Respondent,*

*v.*

## David L. CONNER,
*Defendant-Appellant.*

## Multnomah County Circuit Court
050201275; A130830

182 P3d 878

Thomas M. Christ and Cosgrave Vergeer Kester LLP, and Meagan Flynn and Preston Bunnell & Flynn, LLP, for joint petition.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

In *Farmers Ins. Co. v. Conner*, 217 Or App 83, 174 P3d 1058 (2007), we held that the trial court erred in ruling that ORS 742.544 entitled Farmers Insurance Company (Farmers) to reimbursement of personal injury protection (PIP) benefits. We explained that the parties and the trial court had operated under the belief that ORS 742.544 provided a substantive entitlement to an insurer for the reimbursement of PIP benefits—a proposition that we rejected in *Gaucin v. Farmers Ins. Co.*, 209 Or App 99, 146 P3d 370 (2006). Accordingly, we reversed the trial court judgment and remanded the case to the trial court to determine whether it would allow the parties to submit additional facts demonstrating that Farmers has any entitlement to reimbursement in this case under the language of its insurance policy with Conner and the PIP reimbursement statutes.

The parties filed a joint petition for reconsideration. Neither Conner nor Farmers was happy with our disposition, which they contend sends them back to the trial court to address an issue that they have never argued about—*i.e.*, whether Farmers has an entitlement to reimbursement of PIP benefits *apart from* ORS 742.544. As we read the parties' joint petition for reconsideration, Conner is willing to concede that point, despite the fact that it does not appear in the record before us.[1] Given Conner's concession, and in the interest

---

[1] Initially, the parties submit that "Farmers does not contend here, as it did in *Gaucin*, that ORS 742.544 provides a substantive entitlement to reimbursement of PIP benefits." Respectfully, it is difficult to reconcile that position with the plain language of the questions presented by Farmers to the trial court:

"What obligation, if any, does [Conner] have to reimburse [Farmers], pursuant to ORS 742.544, for PIP benefits previously paid on behalf of [Conner], under the stipulated facts? *Alternatively*, does ORS 742.542 vitiate the right of [Farmers] to receive reimbursement pursuant to ORS 742.544 under the stipulated facts of this case?"

217 Or App at 91 (quoting questions presented by Farmers) (emphasis added). The parties further contend in their joint petition for reconsideration that this court was "mistaken when it said that 'the trial court erred in determining that ORS 742.544 *requires* PIP reimbursement on these facts.' 217 Or App at 92." (Emphasis in petition for reconsideration.) According to the parties, "[a]ctually, what the trial court determined is that ORS 742.544 does not *prohibit* reimbursement on these facts[.]" (Emphasis in petition for reconsideration.) Again, the parties' position in their petition for reconsideration is difficult to reconcile with the language of the trial court's ruling, which we quoted in our original opinion: "ORS 742.544 requires

of judicial economy, we are willing to address the question that we declined to reach in our original opinion: Does ORS 742.542 limit the reimbursement of PIP benefits in this case? We answer that question in the affirmative and, therefore, we grant the joint petition for reconsideration, withdraw our original disposition, and reverse and remand for entry of judgment in favor of Conner.

As noted in our original opinion, the parties presented this case to the trial court on stipulated facts. We take the facts and procedural history from our earlier opinion:

"Conner was injured when his vehicle was struck by a vehicle driven by Herr, who was insured under a liability policy with bodily injury limits of $25,000 per person. Conner was insured by Farmers; he had PIP coverage up to $100,000 and uninsured/underinsured (UM/UIM) motorist coverage of $50,000 per person. As a result of the collision with Herr, Farmers paid Conner PIP benefits in the amount of $28,589.20. Conner also recovered $25,000 from Herr's insurer. Conner then sought UIM benefits from Farmers, and the parties submitted that claim to binding arbitration. The arbitrator determined that Conner suffered economic damages in the amount of $30,376.99 and noneconomic damages in the amount of $60,000.

"The parties then disagreed as to whether, based on the arbitrator's determination of damages, Conner was required to reimburse Farmers for the PIP benefits that it had paid. Farmers argued that it was entitled to reimbursement pursuant to ORS 742.544, which provides:

" '(1)   A provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 31.710 suffered by that person. As used in this section, 'total amount of benefits' means the amount of money recovered by a person from:

full reimbursement of the PIP payments in the amount of $25,589.20." 217 Or App at 87. That said, we are willing to treat the joint petition for reconsideration as a concession by Conner that, but for ORS 742.542, Farmers would be entitled to reimbursement of PIP benefits.

" '(a)  Applicable underinsured motorist benefits described in ORS 742.502(2);

" '(b)  Liability insurance coverage available to the person receiving the personal injury protection benefits from other parties to the accident;

" '(c)  Personal injury protection payments; and

" '(d)  Any other payments by or on behalf of the party whose fault caused the damages.'

"According to Farmers, Conner's 'total amount of benefits' of $78,589.20 ($28,589.20 in PIP benefits, $25,000 in UIM benefits to which Conner was entitled, and $25,000 from Herr's insurance) exceeded his economic damages of $30,376.99 by $48,212.21. Thus, Farmers argued, it was entitled to be reimbursed for the full amount of PIP benefits, or $28,589.20, pursuant to ORS 742.544.

"In response, Conner made two arguments. First, he argued that ORS 742.544 does not apply where PIP benefits and UIM benefits are provided by the same insurer, as in this case. Instead, he contended, ORS 742.542 applies to that circumstance. That statute provides:

" 'Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits.'

"ORS 742.542. Alternatively, Conner argued that, if both ORS 742.542 and ORS 742.544 are applicable, they are in conflict. And, in Conner's view, in the event of such a conflict, ORS 742.542 must control because it is the more specific of the two statutes; that is, Farmers should not be permitted to 'invoke the reimbursement provision of ORS 742.544 to accomplish the reduction of UM/UIM policy limits that the legislature has specifically prohibited.'

"The trial court ruled in favor of Farmers, concluding that 'both statutes can and must be applied to the circumstances presented.' First, the court rejected the argument that ORS 742.544 applies only when PIP and UIM payments are made by different insurers:

" 'The statute is clear: "A provider of personal injury benefits shall be reimbursed for [PIP] payments made on behalf of any *person* \* \* \*" ORS 742.544(1) (emphasis added). Nothing in the statute limits this requirement to situations in which the UIM carrier does not pay PIP to its own insured.'

"(Brackets and ellipsis in original.) The court then observed that reimbursement under these circumstances does not offend ORS 742.542 because Conner 'will still satisfy his UIM policy limit of $50,000 through payments from Mr. Herr and [Farmers].' Thus, the court ruled that, '[b]ecause total benefits exceed economic damages by more than the amount of PIP paid, ORS 742.544 requires full reimbursement of the PIP payments in the amount of $28,589.20.' The court then entered judgment in favor of Farmers in the amount of $28,589.20, to be offset by Farmers's obligation to pay $25,000 in UIM benefits."

217 Or App at 85-87.

■　　　The question before us on reconsideration, in light of Conner's concession that Farmers would otherwise be entitled to reimbursement of PIP benefits, is a narrow one: Does ORS 742.542 limit an insurer's entitlement to reimbursement of PIP benefits from its own insured where the insured has been less than fully compensated for his or her total damages? According to Conner, ORS 742.542 entitles an insured to retain *both* PIP benefits *and* UIM benefits paid by its own insurer under those circumstances, thereby prohibiting the insurer from seeking reimbursement of PIP benefits. Farmers, for its part, argues that ORS 742.542 pertains only to the calculation of UIM benefits and has nothing to do with reimbursement of PIP benefits; the only limitation on reimbursement of PIP benefits, in Farmers's view, is embodied in ORS 742.544, which guarantees only that an insured will recover his or her *economic* damages before the insured will be required to reimburse the insurer for PIP payments.

　　　The parties' dispute, so framed, requires us to determine the legislature's intent in enacting ORS 742.542. That statute provides:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the

insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident *but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits.*"

(Emphasis added.) Specifically, we must determine whether, through reimbursement of PIP benefits that it paid to Conner, Farmers seeks to apply those benefits "in reduction of the uninsured or underinsured motorist coverage policy limits." ORS 742.542.

■     To answer that question, we begin by examining the text of the statute in context. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (describing methodology for statutory construction). As part of the statute's context, we examine "earlier versions of the statutory scheme and its development through successive legislatures." *State v. Guzek*, 336 Or 424, 453, 86 P3d 1106 (2004), *vac'd and rem'd on other grounds*, 546 US 517, 126 S Ct 1226, 163 L Ed 2d 1112 (2006). And here, the statutory context of ORS 742.542, though complicated, is particularly instructive. ORS 742.542, formerly ORS 743.835, was enacted in 1971. At that time, the statute provided:

"Payment of any benefit required by [ORS 743.800 (personal injury protection benefits)] to or for any insured and any payment required by [ORS 743.825] to any health insurer or health care service contractor shall be applied in reduction of the amount of damage that the insured may be entitled to recover from any insurer under bodily liability or uninsured motorist coverage for the same accident."

Or Laws 1971, ch 523, § 9. Four years later, the legislature amended the statute to, among other things, apply only to payments made by an insurer to its *own insured*. Thus, after the 1975 amendment, the statute provided:

"Payment by a motor vehicle liability insurer of personal injury protection benefits *for its own insured* shall be applied in reduction of the amount of damage that the insured may be entitled to recover from his insurer under uninsured motorist coverage for the same accident."

Or Laws 1975, ch 784, § 10 (emphasis added).

Then, beginning in 1976, the Supreme Court issued a series of decisions in which it construed and applied the statute, the first of which was *Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 550 P2d 422 (1976). In *Monaco*, the "only question presented * * * [was] whether ORS 743.835 allows an insurer to subtract personal injury protection benefits paid to its insured from the amount due under the uninsured motorist coverage whether or not the insured is fully compensated for his or her loss." 275 Or at 185. The insured[2] argued that "ORS 743.835 should be interpreted only to prohibit double recoveries, not to limit recovery in a case such as this one where the stipulated damages are in excess of the uninsured motorist coverage." *Id.* at 187. The insured further argued that the legislative history of the statute was twofold: First, it would provide quick payment of claims, and second, it would ensure that all insured drivers, their families and guests, and pedestrians injured by them, would recover medical and economic losses subject to limits purchased without regard to fault. *Id.* at 188.

The court rejected those arguments. Initially, the court took issue with the insured's description of the legislative history of the statute, noting that a "more persuasive indication of legislative intent" was found in a May 19, 1971, written presentation from the Special Advisory Committee on Auto Insurance to the Senate Committee on the Judiciary, which stated that the " 'money paid by an insurer under this coverage [personal injury protection] *is not in addition to the policy limits in "limits" cases.*' " 275 Or at 188 (emphasis added). Ultimately, however, the court relied on the plain language of the statute to resolve the question:

> "Although all statutes can perhaps be more artfully drawn, there is no ambiguity in the language of ORS 743.835. It clearly does not limit reduction from the amount payable to situations where the total damages of the insured are less than the uninsured motorist policy coverage amount."

---

[2] In *Monaco*, the insurance policy had been issued to the plaintiff's mother, the guardian *ad litem* of the plaintiff. The plaintiff was an insured under that policy.

*Id.* In short, *Monaco* rejected the argument that ORS 743.835 entitled insureds to retain PIP benefits *in addition to* uninsured motorist benefits.

Next, the Supreme Court decided *Kessler v. Weigandt*, 299 Or 38, 699 P3d 183 (1985), and *Staiger v. Burkhart*, 299 Or 49, 698 P2d 487 (1985). *Kessler* involved a dispute concerning the effect of inter-insurer reimbursement for PIP benefits. The reimbursing insurer argued that it was entitled to a credit under ORS 743.835 for PIP payments when calculating whether the insurer had exhausted its policy limits in settling a claim against its insured. The court observed that, after the 1975 amendments, ORS 743.835 was applicable "solely to those situations involving a claim for PIP benefits and uninsured motorist coverage against the payee's own insurer." 299 Or at 47. Because the case did not concern a claim for PIP benefits and uninsured motorist coverage against the PIP payee's *own insurer*, the court ultimately concluded that ORS 743.835 was not applicable. Nevertheless, before determining that the statute was inapplicable, the court offered an observation about the statute and its legislative history. Examining the same legislative history cited in *Monaco*—to the effect that PIP benefits were not "in addition to" policy limits—the court noted that there appeared to be an incongruity between the legislative history and the statutory language:

> "The statement speaks to subtraction of the amount of PIP benefits from the 'policy limits.' The statute speaks to an entirely different minuend, *i.e.*, 'the amount of damage [sic]' which an injured person may be entitled to recover from an insurer. The text of the statute is not in accord with the Commissioner's explanation if the *damages* that a PIP benefits payee is entitled to recover are in *excess* of the policy limits."

299 Or at 44-45 (alteration and emphases in original).

In *Staiger*, decided the same date as *Kessler*, the issue was "whether a motor vehicle liability insurer is entitled to an offset against its liability policy limits for the sum it has paid to an injured person as personal injury protection (PIP) benefits." 299 Or at 51. The plaintiffs in *Staiger* were passengers in a vehicle driven by Burkhart. The defendant,

Oregon Mutual Insurance Company (OMIC), had issued a motor vehicle liability policy to Burkhart. Under the policy, the plaintiffs were entitled to PIP benefits from OMIC, and OMIC paid each plaintiff $5,000 in PIP benefits. OMIC then sought to offset those PIP payments against the amount that it contributed to settle the plaintiffs' claims against Burkhart. OMIC based its argument, in part, on the legislative history of ORS 743.835 discussed in *Monaco* that "indicated that the legislature intended that the PIP benefits not be in addition to the amount recoverable up to policy limits in 'limits' cases." 299 Or at 53.

The court in *Staiger* ultimately rejected OMIC's argument on the ground that the 1975 amendment to ORS 743.835 limited "the right of offset [to] the writer of uninsured motorist coverage." 299 Or at 53. As in *Kessler*, the insurer seeking reimbursement was not the writer of the plaintiff's uninsured motorist coverage. But, also as in *Kessler*, the court offered *dictum* concerning ORS 743.835 and its prior jurisprudence. In a footnote in *Staiger*, the court noted:

> "There is no hint in the opinion in *Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 550 P2d 422 (1976), that the plaintiff specifically argued that the offset was to be applied to her damages rather than the policy limits. The opinion does not disclose that this court may have realized there was a real question. *See Kessler v. Weigandt*, 299 Or 38, 699 P2d 183 (1985)."

299 Or at 53 n 6.

Although neither *Kessler* nor *Staiger* directly addressed the issue decided in *Monaco*—that PIP benefits were not *in addition to* uninsured motorist benefits under ORS 743.835 the court's *dictum* in *Kessler* and footnote in *Staiger* caused this court to question the continuing viability and scope of *Monaco*. In *Bauder v. Farmers Ins. Co.*, 76 Or App 41, 707 P2d 1296 (1985), the insured had a policy with Farmers that included PIP coverage and uninsured motorist coverage each with a $100,000 limit. After the insured was injured by an uninsured motorist, Farmers paid PIP benefits to its insured in the amount of $100,000 and then denied the

insured's claim for uninsured motorist coverage. On appeal, the insured argued that

"ORS 743.835 allows an insurer's PIP payments to its insured to be subtracted from the *damages* the insured may recover under his uninsured motorist coverage, but that the statute does not contemplate that *the limits of the uninsured motorist coverage* can be reduced by the insurer's PIP payments."

76 Or App at 43 (emphases in original). According to the insured, *Kessler* and *Staiger* "all but eradicated" *Monaco* as contrary authority on the subject. 76 Or App at 44. After explaining that *Kessler* and *Staiger* "make it clear that the precise question plaintiff raises is now an open one, notwithstanding *Monaco*," we ultimately agreed with the insured's construction of ORS 743.835:

"The statute refers to a 'reduction of the amount of *damage* that the insured may be entitled to recover from his insurer *under* uninsured motorist coverage.' (Emphasis supplied.) The statute does not say that PIP payments can effect a diminution of the uninsured motorist coverage itself. Moreover, if policy arguments were relevant to the inquiry, we would find considerable merit to plaintiff's contention that the only logical objective of ORS 743.835 is to prevent PIP payments from resulting in double recovery, not to eliminate a second specie of coverage for which a premium has been paid and that is necessary to compensate the insured fully."

76 Or App at 44-45.

The Supreme Court disagreed. *Bauder v. Farmers Ins. Co.*, 301 Or 715, 725 P2d 350 (1986). After retracing its decisions in *Monaco*, *Kessler*, and *Staiger*, the court explained:

"*Kessler* and *Staiger* are obviously distinguishable from *Monaco*, which remains the only opinion of this court specifically dealing with offsetting PIP payments against UM payments. *Monaco* holds that the statute authorizes such a setoff. * * *

"The Court of Appeals, however, relied on our *dictum* in *Kessler* and, particularly, our footnote 6 in *Staiger* to infer that, were we facing the issue anew, we might decide

*Monaco* differently. That inference is not unreasonable. However, we conclude that *Monaco* was right when it was decided and we are not going to overrule it now."

301 Or at 725-26. The court adhered to *Monaco* for two reasons. First, the rule announced in *Monaco* "survived five regular legislative sessions after [the court's] interpretation was announced. [The court saw] no reason to do what the legislature, for whatever reason, ha[d] not seen fit to do." *Id.* at 726. Second, the court explained that its implied criticism of *Monaco* in the footnote in *Staiger* was somewhat unjustified; although the *Monaco* opinion had not mentioned the significance of the legislature's use of the term "damage" rather than "policy limits," that issue had been briefed and argued by the parties. Accordingly, the Supreme Court reversed this court's decision and affirmed the judgment in favor of the insurer. 301 Or at 726.

In the legislative session following the Supreme Court's decision in *Bauder*, the legislature amended ORS 743.835. As amended, the statute provided:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of [*damage*] **damages** that the insured may be entitled to recover from the insurer under uninsured motorist coverage for the same accident **but may not be applied in reduction of the uninsured motorist coverage policy limits**."

Or Laws 1987, ch 632, § 3 (additions in boldface; deletions in brackets and italics). It was later renumbered as ORS 742.542 in 1989.

Notably, however, the amended statute did not reference UIM, as opposed to UM, coverage. Accordingly, in *Yokum v. Farmers Ins. Co.*, 117 Or App 546, 549, 844 P2d 937, *rev den*, 317 Or 272 (1993), this court declined to apply the statute in the UIM context. We explained that the calculation of "UIM limits" of the policy is made under ORS 742.502(2): "UIM limits equal UM limits less the amount recovered from the tortfeasor's insurer." 117 Or App at 549. "That calculation can be made without conflict with ORS

742.542, which is equally straight forward. Any inconsistency between the benefits available for UM and UIM claimants is for the legislature to address." *Id.* (footnote omitted). In a footnote, we stated:

"The provision of ORS 742.542 precluding insurers from reducing UM limits by the amount of PIP benefits paid was added in response to *Bauder v. Farmers Insurance Company*, 301 Or 715, 725 P2d 350 (1986), where the court held that an insurer could reduce UM limits by the amount of PIP benefits paid. The legislature intended the amendment to vitiate that decision. Tape Recording, House Judiciary Committee, June 1, 1987, Tape 692 at 224-440. The legislature was apprised that limiting its statutory revision to UM coverage only could result in inconsistencies between that coverage and UIM coverage. If plaintiff had been injured by an uninsured motorist, instead of by an underinsured motorist, he would have been entitled, under ORS 742.542, to stack his PIP and UM benefits, up to the amount of his damages. That is exactly what *Bauder* said could not be done. Consequently, the legislature succeeded in displacing that decision."

117 Or App at 549 n 1.

The legislature did, in fact, address the inconsistency in the statute's treatment of UM and UIM benefits that we identified in *Yokum*. In 1997, the statute was again amended, such that the current (and applicable) version of the statute provides:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damages that the insured may be entitled to recover from the insurer under uninsured or underinsured motorist coverage for the same accident but may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits."

Or Laws 1997, ch 808, § 10.

In light of the above statutory context, Conner argues that the legislature intended ORS 742.542 to overrule the Supreme Court's decisions in *Bauder* and *Monaco,* as well as this court's opinion in *Yokum*, thereby allowing an insured to retain both PIP and UIM benefits up to the amount of the insured's damages. Conner further argues that, if Farmers is

reimbursed for PIP benefits that it paid in this case, it will frustrate that legislative intent. That is, Conner argues that reimbursement will accomplish a result that is prohibited by the statute.

We agree that, when the phrase "may not be applied in reduction of the uninsured or underinsured motorist coverage policy limits" is read in light of previous versions of the statute and case law, Conner's argument is plausible. In this case, Conner's damages exceed $90,000, and his total recovery was $78,589. Under that set of facts, any reimbursement of PIP benefits could be said to reduce, if only indirectly, the benefits otherwise provided under the UM/UIM policy.

In response, Farmers argues that, "[d]espite numerous amendments to the PIP statutes in the past two decades, the legislature has not converted PIP coverage into a form of additional, non-reimbursable coverage, to supplement liability coverage and UM and UIM coverage." Rather, Farmers argues that, under ORS 742.542, the legislature has simply provided that an insurer cannot reduce the limit of UIM coverage and thereby reduce the UIM benefits owed. According to Farmers, UIM benefits have not been reduced in this case—plaintiff received $25,000 in UIM benefits, the maximum that he was entitled to receive under ORS 742.502(2).

Farmers's argument, too, is plausible. Read literally, ORS 742.542 does not address reimbursement of PIP benefits; rather, it appears to address only the calculation of UIM benefits. Arguably, had the legislature intended to address both the calculation of UIM benefits *and* the reimbursement of PIP benefits, it could have done so explicitly. Moreover, as Farmers correctly points out, Conner receives the same amount of UIM benefits regardless of whether he is separately entitled to retain PIP benefits. Thus, although the context of the statute is consistent with Conner's construction, Farmer's construction of the statute is more plausible based on its plain language.

Some of the ambiguity in ORS 742.542 results from the fact that "underinsured motorist coverage" was grafted onto an existing statutory scheme. That is, the phrase "underinsured motorist coverage" was inserted into a statute that previously addressed only *uninsured* motorist coverage.

The result is a reference to a reduction in "uninsured or underinsured motorist coverage policy limits." It is not entirely clear from the text or context of the statute what the legislature intended by the phrase "underinsured motorist coverage policy limit." As the Supreme Court explained in *Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 217, 179 P3d 633 (2008), the threshold question of whether a motorist is "underinsured" is determined in relation to the *uninsured* motorist coverage policy limits; the limit of the insurer's *liability* (*i.e.*, the amount of benefits paid) under that coverage, however, is calculated by subtracting the "amount that the insured recovers from other policies" from the uninsured policy limit. Thus, the phrase "underinsured motorist coverage policy limit" could refer either to the upper limit of benefits to which an underinsured motorist is entitled (the dollar amount of the UM policy) or to the limit of the insurer's liability (the dollar amount of the policy, minus the amount recovered from other policies).

Because both Farmers's and Conner's constructions of ORS 742.542 are plausible, we turn to the legislative history of the statute in an effort to determine whether the legislature intended to prohibit reimbursement under these circumstances, *i.e.*, where an insured's damages exceed the sum of his recovery from the tortfeasor, his underinsured motorist benefits, and his PIP benefits. As noted above, the "applied in reduction" language was added to the statute in 1987. And, as we previously explained in *Yokum*, the legislative history of that amendment demonstrates a clear intent to vitiate the Supreme Court's decision in *Bauder*. *See* 117 Or App at 549 n 1 (citing testimony before the House Judiciary Committee, June 1, 1987, to that effect).

It is clear from the House floor debates that, by overturning *Bauder*, the legislature understood that it was allowing an insured to "keep both the policy limit dollar amount and the PIP coverage," thereby creating a "greater amount of coverage in insurance recovery than was there before." Tape Recording, House Floor Debate, HB 3351, June 18, 1987, Tape 28, Side 2 (statement of Rep Stan Bunn). That is, the legislature believed that it was allowing an insured to retain both uninsured motorist coverage benefits and PIP benefits, up to the amount of the insured's damages.

The staff measure analysis, provided to the Senate Judiciary Committee and read, almost verbatim, by the senator who carried the amendment on the Senate floor, further suggests that the legislature intended insureds to retain both uninsured motorist coverage benefits and PIP benefits. Staff Measure Analysis, Senate Judiciary Committee, HB 3351, June 23, 1987; Tape Recording, Senate Floor Debate, HB 3351, June 25, 1987, Tape 228, Side B (statement of Sen Bill Bradbury). The "problem addressed" was described as follows:

> "When an insurer pays personal injury protection (PIP) benefits under a policy, it uses that amount to decrease its policy limits under UM coverage in that policy. A person whose policy provides a $10,000 limit for PIP benefits and $10,000 for uninsured motorist coverage will recover a maximum of $10,000, even if the person incurs damages in excess of that amount, and has paid premiums for both coverages."

Staff Measure Analysis, Senate Judiciary Committee, HB 3351, June 23, 1987. The analysis provided that, to remedy that problem, "[i]nsurers will not be allowed to use PIP benefits to decrease policy limits and payments under UM coverage in the same policy." *Id.* In short, the legislature was concerned that insureds were not receiving *both* uninsured motorist coverage benefits and PIP benefits from their insurer, despite the fact that they had "paid premiums for both coverages."

Thus, although the legislature did not expressly address the subject of reimbursement of PIP benefits in ORS 742.542, the language that it did use in the 1987 amendment "applied in reduction of"—was certainly broad enough to encompass situations in which insurers use reimbursement, as opposed to a direct offset of benefits, to limit an insured's recovery to *either* uninsured motorist coverage benefits *or* PIP benefits. Said another way, we conclude that the legislature intended the 1987 amendment to ORS 742.542 to prohibit any offset—including through reimbursement—of PIP benefits, where the effect of that offset would be to deprive the insured of the benefits of both PIP coverage and uninsured motorist coverage, where the insured's damages exceed

the amount of the insured's recovery of PIP benefits and uninsured motorist coverage benefits.

As noted above, however, the 1987 amendment did not address UIM coverage. Accordingly, we must also examine the legislative history of the 1997 amendment that expanded the scope of ORS 742.542 to include a reference to "underinsured motorist coverage." That amendment was part of Senate Bill (SB) 645, which addressed a number of issues in the UM/UIM and PIP statutes. The amendment to ORS 742.542 was actually part of a compromise between representatives of insureds and insurers, and was one of the provisions benefitting insureds.[3]

Joel DeVore, an attorney who was instrumental in drafting and presenting the compromise bill to the Senate Business, Law and Government Committee, explained that the bill was intended to protect UIM benefits to the same extent as uninsured motorist coverage benefits. He noted that current law did not include a reference to UIM benefits, and that courts had interpreted the statute strictly in that regard. DeVore then offered an example of why the amendment was necessary. In that example, the insured (like Conner) had $50,000 in UM/UIM coverage and damages of $75,000, and the insurer paid $25,000 in PIP benefits. Under the current state of the law, "[t]he $25,000 in PIP will be subtracted from your $50,000 limits, and you will only net 25, even though your injury is worth 75." Tape Recording, Senate Business, Law and Government Committee, SB 645, Apr 3, 1997, Tape 132, Side B (testimony of Joel DeVore). The amendment, DeVore explained, would allow the insured to recover both PIP and UIM benefits, thereby providing "better UIM benefits" and an "expansion in coverage." *Id.*

■     The legislative history also sheds light on the meaning of the phrase "underinsured motorist coverage policy limits" in ORS 742.542. By amending the statute in 1997, the

---

[3] The primary benefit for insurers in SB 645 was to overturn the decision in *Vega v. Farmers Ins. Co.*, 323 Or 291, 918 P2d 95 (1996), which held that an insured was entitled to proceed directly against his or her own insurer for UIM coverage without first exhausting the limits of the underinsured tortfeasor's insurance coverage. Tape Recording, Senate Business, Law and Government Committee, SB 645, Apr 3, 1997, Tape 132, Side B (testimony of Joel DeVore).

legislature intended to provide the same protections under ORS 742.542 to persons injured by uninsured motorists and those injured by *under*insured motorists; however, that result follows only if the phrase "underinsured motorist coverage policy limits" refers to the dollar amount of the UM/UIM policy, not the amount of UIM benefits owed under the policy. For example, if an insured has a policy with limits of $50,000 for uninsured motorist coverage and $25,000 for PIP coverage, and the insured is injured by an uninsured motorist and suffers damages of $100,000, ORS 742.542 would permit the insured to retain $25,000 in PIP benefits *in addition to* the $50,000 paid under the uninsured motorist coverage, yielding a total recovery of $75,000 under the policy.

If that same insured were to suffer the same damages as a result of a collision with a motorist who is covered under a $25,000 liability policy (as in this case), the insured would recover $25,000 from the tortfeasor's insurer, $25,000 from his own insurer, and $25,000 in PIP benefits. But if, as Farmers argues, the "policy limit" in that context is the $25,000 limit on payment of UIM benefits, reimbursement of PIP benefits would not reduce the amount that the insurer is required to pay as a result of the collision with the underinsured motorist—the insurer would still pay $25,000 in UIM benefits. The insured would be entitled to the full limit of $25,000 in UIM benefits from the insurer, but, as a result of the PIP reimbursement, the insured would ultimately recover only $50,000 (rather than $75,000). That is, if the statute were construed as Farmers suggests, it would provide less protection to insureds injured by underinsured motorists than those injured by uninsured motorists, a result that would frustrate the legislature's manifest intent.

On the other hand, if the phrase "underinsured motorist coverage policy limit" refers to the total amount that the insured is entitled to recover under the policy's underinsured motorist coverage—that is, the sum of the insured's recovery from other insurance policies and UIM benefits ($50,000)—ORS 742.542 provides the same protection to insureds who are injured by uninsured and underinsured motorists. In both situations, the insured will be entitled to retain PIP benefits in addition to the $50,000, yielding the same total recovery of $75,000.

■ Considering all of the above text, context, and legislative history, we conclude that the legislature intended ORS 742.542 to limit an insurer's ability seek an offset or reimbursement of PIP benefits to the extent that the insured's damages exceed the limits of the UM/UIM policy. Said another way, the legislature intended insureds to recover, *from their own insurers*, the benefits of both their UIM coverage and their PIP coverage. Therefore, Conner was entitled to the benefits of both his UIM and PIP coverage, and Farmers cannot be permitted to recover the PIP payments through reimbursement, thereby reducing Conner's "underinsured motorist coverage policy limit" below $50,000. Said another way, Farmers cannot, through reimbursement, accomplish the very reduction of benefits that the legislature intended to prohibit in ORS 742.542.

In sum, although the language of the statute itself is less than clear, the previous versions of the statute, prior case law, and the statute's legislative history demonstrate that the legislature intended that insureds would be entitled to both UIM and PIP benefits up to the level of their damages. Because reimbursement of PIP benefits in this case would frustrate that legislative intent, we conclude that the trial court erred in awarding to Farmers the PIP benefits that it previously paid to Conner.

■ Before concluding, we briefly address the relationship between ORS 742.542 and ORS 742.544, another statute that places limitations on reimbursement of PIP benefits. That statute provides that "[a] provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person *only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 31.710 suffered by that person * * *.*" ORS 742.544 (emphasis added).

■ As we explained in *Gaucin*, ORS 742.544 does not provide any entitlement to reimbursement of PIP benefits; rather, it exists solely as a limitation on reimbursement. 209 Or App at 109. And, as applied to the facts before us, ORS 742.544 does not operate to restrict reimbursement. Conner's "total amount of benefits," for purposes of ORS 742.544, is $75,000 ($25,000 from the tortfeasor's insurer; $25,000 in

UIM benefits, and $25,000 in PIP benefits). Because that amount "exceeds the economic damages" suffered by Conner ($30,376.99, according to the arbitrator's award), Farmers's entitlement to reimbursement is not limited by ORS 742.544.

■      Farmers argues that ORS 742.544, which specifically addresses the subject of reimbursement of PIP benefits, is intended to be the *only* limitation on such reimbursement. Based on the legislative history of ORS 742.542 set forth above, we disagree. Nor do we perceive any conflict between the limitation on PIP reimbursement in ORS 742.542, as we have construed that statute, and ORS 742.544.[4] ORS 742.542, by its terms, applies only in the circumstance where an insurer has paid UM/UIM benefits and PIP benefits to "its own insured." And, as between the insurer and its own insured, the legislature has made a policy decision to protect the insured's entitlement to PIP benefits up to the level of the insured's damages—a decision justified, at least in part, on the ground that the insured paid premiums for both PIP and UIM coverage.

ORS 742.544, on the other hand, is not so limited. It governs reimbursement to a "provider of personal injury protection benefits" and applies beyond the limited context governed by ORS 742.542.[5] For example, ORS 742.544 applies to inter-insurer reimbursement and in circumstances in

_____

[4] Given that ORS 742.544 does not create any entitlement to reimbursement, there is no *direct* conflict between the two statutes—*i.e.*, ORS 742.542 does not take away something that is expressly authorized by ORS 742.544.

[5] As we explained in *Gaucin*, 209 Or App at 106-07, ORS 742.544 was designed to overturn our decision in *Babb v. Mid-Century Ins. Co.*, 110 Or App 67, 70-71, 821 P2d 424 (1991), *rev den*, 313 Or 209 (1992), which held that, "when an insurer seeks reimbursement from a tortfeasor's liability insurer for PIP benefits, the PIP insurer is entitled to be reimbursed before the victim may receive anything." We described the legislative history of ORS 742.544 in this way:

"Thus, 'overruling' *Babb* in HB 3484 simply meant that, under the new provision, PIP insurers would be outranked by insureds who have outstanding economic losses. Indeed, because the bill also left ORS 742.534 in place and added the phrase '[e]xcept as provided in ORS 742.544,' we understand ORS 742.544 as prioritizing the compensation of PIP insureds within the existing authorization framework. As Kathleen Eyeman confirmed, 'What it basically says is the money from the liability carrier will first go to pay the economic damages of the injured person, then if there is more money left over * * * that will be used to reimburse PIP.'"

*Gaucin*, 209 Or App at 107-08 (quoting Tape Recording, Conference Committee, HB 3484, June 30, 1993, Tape 98, Side A (statement of Kathleen Eyeman)).

which the tortfeasor is not uninsured or underinsured. In situations such as those, where ORS 742.542 is inapplicable, ORS 742.544 protects and prioritizes the insured's recovery of *economic* damages. However, where a provider of PIP benefits attempts to recover those benefits from its own insured in the UM/UIM context, ORS 742.542 provides an *additional* protection to insureds. In sum, where the insurer has provided both PIP and UM/UIM benefits to its insured, the legislature has made a policy decision that allows the insured to retain both PIP and UM/UIM benefits up to the level of the insured's damages.

Reconsideration allowed; former opinion withdrawn; reversed and remanded with instructions to enter judgment in favor of defendant.