**WELCH TRANSFER AND STORAGE, INC., Wyman W. Welch & Marlene Welch, Plaintiffs and Appellants,**

v.

**Don A. OLDHAM dba Shoppers' Guide, Defendant and Respondent.**

**No. 17444.**

Supreme Court of Utah.

April 13, 1983.

---

**2.** See U.C.A., 1953, § 35–4–5(e).

Glen J. Ellis, Provo, for plaintiffs and appellants.

S. Rex Lewis, John L. Valentine, Provo, for defendant and respondent.

STEWART, Justice:

Plaintiffs brought this action for breach of a contract to exchange real properties owned by plaintiffs Welch Transfer & Storage, Inc. and Wyman and Marlene Welch (hereafter collectively called the Welches) and the defendant Don A. Oldham dba Shoppers' Guide (Oldham). The trial court held that the contract expired by its own terms because the parties failed to comply with contractual conditions precedent to the consummation of the exchange. Plaintiffs appeal.

The Welches are the owners of real property with a large commercial building on it in Orem, Utah. Defendant owns a smaller building in Provo, Utah. On March 23, 1979, the parties entered into a contract for the exchange of their properties. The contract provided: 1) Oldham was to pay Welches a down payment of $25,000; 2) each party was to be relieved of the S.B.A. loan on its own property and was to assume the existing S.B.A. loan on the property to be acquired; 3) the Welches were to release a part of the Orem parcel which Oldham

was to sell to a third party to raise the $25,000 down payment; and 4) the Welches were to move out of its building on or before April 16. The closing was to take place April 16, 1981.

The contract also contained a clause which stated that time was of the essence in the performance of the contract. That clause was important because of the critical time limitations imposed on Oldham by the nature of his business. The transfer had to be completed within a short time because Oldham had to have the Welch property remodeled and made ready to receive Oldham's printing presses. It was essential that the transfer of the presses occur during the week of July 4, 1979, because that week was the only time during which he had no contractual obligation to publish and circulate his newspaper and advertising materials. A transfer at any other time would have resulted in severe damage to Oldham's business.

Despite the "time is of the essence" clause, the exchange was not consummated on April 16, 1981. Oldham indicated that his buyer for the one-half acre was not able to come up with the $25,000 down payment and the S.B.A. and Zions First National Bank, through which the S.B.A. loans on both properties had been arranged, had not completed their documentation of the transaction. Although time remained a critical factor, the parties continued in good faith to pursue a closing even though Oldham's contractor, who was to do the remodeling, indicated he could not be bound by his contract because of the loss of time. Oldham then found another contractor who would do the work if it could be commenced promptly. On May 4, 1979, the parties tried again to complete the closing, but would not sign the closing papers because of an objectionable clause: although the S.B.A. approved the assumption by the parties of each other's loans, the documents providing for the parties' signatures stated that each party guaranteed the debt against the other's property. No further contact occurred between the parties after May 4. By a letter dated May 14, 1979, Oldham notified the Welches that he would no longer be bound by the terms and provisions of the agreement since the conditions attached thereto had not been met.

The trial court made the following critical findings of fact:

5. Shortly after the April 16th date, Defendant Oldham's Contractor advised him that he could no longer guarantee having improvements made on the Welch property to permit Oldham to have the presses moved in by the July 4th deadline, and refused to be bound further contractually to Oldham for such improvements. However, another Contractor agreed to undertake the work if it could be commenced soon.

6. The parties met on May 4, 1979, at Zions First National Bank for the purpose of then trying to finalize the Agreement, and both parties consented to proceed in spite of their failure to meet the April 16th closing. At such meeting, problems relating to the inability of Defendant to come up with the $25,000 down payment required in the Contract, was to be resolved by a Promissory Note, and approval of the SBA for the transaction appeared to have been secured. However, the documentation for the loan provided that each party was guaranteeing the debt against each others property, and so both Welch and Oldham declined to go forward with the signing of closing papers and the closing date again was not met.

The Welches contend that the trial court erred in refusing to set the entire case for a trial by jury. Although they filed a timely notice of demand for a jury trial prior to trial, the trial court ordered that the trial be bifurcated. The various issues relating to whether there was breach of contract were tried to the court, and the issues relating to damages were to be tried to a jury.

The Welches contend that the trial court erred in denying them a jury trial on the issue of whether Oldham breached the contract. In *International Harvester Credit Corp. v. Pioneer Tractor,* Utah, 626 P.2d 418 (1981), we held that Article I, § 10 of the

Utah Constitution guarantees the right to trial by jury on legal issues in civil cases. That basic right is also codified in the Judicial Code, U.C.A., 1953, § 78–21–1. Several issues raised by appellants in their complaint were triable by jury, and if resolution of those issues were necessary to proper disposition of this case, we would be obliged to remand this case for determination by a jury. However, in the instant case there is one issue as to which there is no factual dispute and which is dispositive of the entire case.

■ The S.B.A. approval of the reciprocal assumption of loans was a condition precedent to consummation of the exchange by both parties. It is undisputed that neither party contemplated that it would assume the loan of the other party and also continue to be liable on the loan assumed by the other party. Yet that was precisely what the loan assumption agreements provided. Neither party, however, was agreeable to such a provision. Thus, the reciprocal assumption by the parties of the other's loan, and their release of obligations as to the properties being transferred, was not accomplished. Those mutual conditions were essential as far as both parties were concerned to consummation of the exchange.

■ Where fulfillment of a contract is made to depend upon the act or consent of a third person over whom neither party has any control, the contract cannot be enforced unless the act is performed or the consent given. *O'Brien v. Fricke*, 148 Neb. 369, 27 N.W.2d 403 (1947); *Evans v. Platte Valley Public Power & Irrigation District*, 144 Neb. 368, 13 N.W.2d 401 (1944); 17 Am. Jur.2d *Contracts* § 361 at 803 (1964). *See also Compania de Astral, S.A. v. Boston Metals Co.*, 205 Md. 237, 107 A.2d 357, 108 A.2d 372 (1954). In the instant case, neither party could control the actions of the S.B.A. and neither party was at fault in the failure of an essential condition precedent.

■ It is true there were also other difficulties between the parties, such as a dispute over whether the substitution of the promissory note for the $25,000 down payment was agreed upon or was still in the negotiating stage. But that dispute is of no significance in light of the inability of both parties to make the necessary financial arrangements. We therefore hold that denial of a jury trial was harmless error because, as a matter of law, an essential condition precedent to consummation of the exchange was never fulfilled.

■ Welch also contends that the trial court's findings are inconsistent. The trial court found that the "April 16th closing could not go forward because of the acts of third parties" and that there was an agreement between the parties to pursue a closing nonetheless. The court also found that the clause making time of the essence was not waived. In view of the mutually well-known time limitation on Oldham, we think the conclusion was justified, as a matter of law, that the parties in postponing the closing date for their mutual advantage for a short period did not waive the clause making time of the essence. Accordingly, we do not see any inconsistency in the findings.

■ Finally, there is no merit to appellants' contention that their reliance on the contract in moving out of their building resulted in an equitable estoppel. The necessity of S.B.A. approval of the reciprocal assumption of each other's loans and release from the obligation of their own loans was for the benefit of both parties: The risk of proceeding as if the sale had been consummated was a risk that each party had to bear.

We affirm the lower court's holding that the contract expired by its own terms. Costs to respondent.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.