506 So.2d 75 (1987)
NEW HAMPSHIRE INSURANCE COMPANY, Appellant,
v.
Herbert C. KNIGHT, Appellee.
No. 86-502.
District Court of Appeal of Florida, Fifth District.
April 30, 1987.
*76 John N. Bogdanoff of Haas, Brown, Rigdon, Seacrest & Fischer, P.A., Daytona Beach, for appellant.
Jack D. Hoogewind, Ridge Manor, for appellee.
ORFINGER, Judge.
Knight's insurance carrier appeals a summary final judgment determining that Knight had $40,000 in available uninsured motorist coverage under his policy, notwithstanding the fact that he settled with and released the tort-feasor without his carrier's consent. We reverse.
Knight's complaint alleged that he was injured when his automobile collided with an automobile owned and negligently driven by one Sherry McArdle who was insured with Atlanta Casualty Company with $10,000/20,000 liability limits. Knight sought a declaratory judgment that he had $50,000 in available uninsured motorist coverage under his policy, less the tort-feasor's $10,000 coverage.
New Hampshire Insurance Company answered, and contended that no uninsured motorist coverage was available because, in direct violation of the policy terms, Knight had:
1. settled his claim with the tort-feasor for an amount less than her available insurance and had done so without New Hampshire's consent;
2. released the tort-feasor and her carrier, thus destroying New Hampshire's right of subrogation;
3. settled with McArdle within the 30 day period given by law to New Hampshire within which it can determine whether it will approve the settlement.
Section 627.727(6), Florida Statutes provides:
(6) If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured for the limits of liability, and such settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim against the underinsured motorist insurer, then such settlement agreement shall be submitted in writing to the underinsured motorist insurer, *77 which shall have a period of 30 days from receipt thereof in which to agree to arbitrate the underinsured motorist claim and approve the settlement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release. If the underinsured motorist insurer does not agree within 30 days to arbitrate the underinsured motorist claim and approve the proposed settlement agreement, waive its subrogation rights against the liability insurer and its insured, and authorize the execution of a full release, the injured person or, in the case of death, the personal representative may file suit joining the liability insurer's insured and the underinsured motorist insurer to resolve their respective liabilities for any damages to be awarded; however, in such action, the liability insurer's coverage must first be exhausted before any award may be entered against the underinsured motorist insurer, and any such award against the underinsured motorist insurer shall be excess and subject to the provisions of subsection (1). Any award in such action against the liability insurer's insured is binding and conclusive as to the injured person and underinsured motorist insurer's liability for damages up to its coverage limits.
New Hampshire argues that this section explicitly requires that the tort-feasor's policy limits be first exhausted before a claim can be made for underinsured coverage. This contention has been squarely rejected by other courts which have considered it. In Abberton v. Colonial Penn Insurance Company, 421 So.2d 6 (Fla. 2d DCA 1982), cert. denied, 430 So.2d 450 (Fla. 1983) the court said:
The enactment of this section had no effect on section 627.727(1) which still provides that the coverage is over and above but shall not duplicate the benefits available to an insured. [Emphasis in original].
The fact that an insured person settles his claim for an amount less than the full amount of liability insurance carried by the tort-feasor is not determinative of the amount of damages actually sustained by him. Settlements are often made for reasons which have little to do with the amount of damages sustained by the injured party. United States Fidelity & Guaranty v. Gordon. [359 So.2d 480 (Fla. 1st DCA 1978)].
We accordingly hold that the enactment of subsection (6) did not change or affect appellants' right to settle for less than the limits available to them from the tort-feasor's liability insurance.
421 So.2d at 8. The court supported its conclusion by looking to the language of section 627.727(6) which recognizes the insurer's subrogation rights against the liability carrier, commenting that this right would not exist if settlement had to be for the full limits of liability coverage. To the same effect, see also Southeastern Fidelity Insurance Company v. Earnest, 378 So.2d 787 (Fla. 3d DCA 1979); Liberty Mutual Insurance Company v. Reyer, 362 So.2d 390 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1369 (Fla. 1979). We agree. Thus, the policy provision in this case which provided that the underinsured benefits would be payable only after any applicable bodily injury liability policy had been exhausted is invalid and unenforceable.
On the contention that the settlement required New Hampshire's prior consent, Knight argues here, as he did below, that a policy endorsement eliminated the consent requirement contained in the body of the policy itself. We do not agree. The section of the policy providing uninsured motorist coverage contains the following provision:
A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
This language is not duplicated in the endorsement providing underinsured coverage. However, the main body of the policy does not expressly include within its definition *78 of "uninsured motorist" one who is underinsured. The endorsement fills in this gap and makes it clear that the definition of uninsured motorist includes one who is underinsured. Thus, the endorsement adds to the provisions of the policy and takes nothing away. There is nothing in the endorsement which either specifically or by necessary implication eliminates or voids the consent requirement of the policy.
The record shows without dispute that Knight settled with the tort-feasor without his insurer's consent and within the 30 day period during which the statute allows the insurer to determine whether or not it will approve a proposed settlement. The violation of a settlement provision in the policy voids coverage unless the insured can conclusively overcome the presumption of prejudice to his insurer. General Accident Insurance Company of America v. Taplis, 493 So.2d 32 (Fla. 5th DCA 1986); Gould v. Prudential Property & Casualty Insurance Company, 443 So.2d 127 (Fla. 5th DCA 1983), rev. denied, 451 So.2d 848 (Fla. 1984); Tucker v. Seward, 400 So.2d 505 (Fla. 5th DCA 1981). A mere denial of prejudice is insufficient. Taplis; Gould, supra.
The record reflects that the automobile causing Knight's injury was owned by Sherry McArdle and her parents. The record reveals nothing at all as to the parents' financial status or responsibility. Sherry is a 26 year old married woman, without children and earning a net income of close to $10,000 per year. Her husband is employed and earns considerably more than she does. At the time her deposition was taken, Sherry owned a new Trans-Am automobile, and by the amount financed, it clearly is not an inexpensive automobile. She had acquired some of her employer's stock, and would likely acquire more as time went on. Although she did not have extensive assets at this time, there was nothing to indicate that her age, health or other resources would make it improbable that she would acquire assets in the future which would be subject to the insurer's subrogation rights during the 20 year life of a judgment. This is not a case like Tucker v. Seward, supra, where the facts reflected that the tort-feasor was a 99 year old nursing home resident without future earning capacity or assets.
The violation of policy terms is clear. The appellee did not meet his burden of demonstrating a lack of prejudice to the insurer by virtue of the unauthorized settlement, and the entry of a summary judgment for the appellee was erroneous. Judgment should have been entered for appellant.
REVERSED.
UPCHURCH, C.J., and SHARP, J., concur.