2012 UT 22

**Tavis McARTHUR, Plaintiff and Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellee.**

No. 20100847.

Supreme Court of Utah.

April 3, 2012.

A. Bryce Dixon, St. George, for appellant.

Stuart H. Schultz, Andrew D. Wright, Andrew B. McDaniel, Salt Lake City, for appellee.

Justice LEE, opinion of the Court:

¶ 1 After sustaining injuries in an auto accident, Tavis McArthur filed this suit in federal district court to recover underinsured motorist (UIM) benefits under his State Farm automobile insurance policy. Soon

thereafter, State Farm filed a motion for summary judgment, arguing that McArthur had failed to exhaust the liability limits of the tortfeasor's insurance, a precondition of his UIM benefits policy. The district court granted the motion, upholding this exhaustion provision against McArthur's claim that it was void on public policy grounds.

¶ 2 McArthur appealed to the Tenth Circuit Court of Appeals. In its review, the Tenth Circuit certified two questions to us: (1) whether an exhaustion clause like State Farm's is generally unenforceable in the State of Utah as contrary to public policy; and (2) if not, whether the enforceability of such a clause is contingent on the insurer establishing actual prejudice to its economic interest. We agree in large part with the decision of the federal district court, but take this opportunity to clarify the judicial role under Utah law in assessing the enforceability of the terms of automobile insurance policies.

¶ 3 We first conclude that exhaustion clauses that require the liability insurer to pay out its full policy limits before permitting payment of UIM benefits are not generally unenforceable in the State of Utah. Second, we hold that the enforceability of UIM exhaustion provisions is not contingent upon an insurer's showing of actual prejudice because they are not covenants but rather conditions precedent.

I

¶ 4 On August 5, 2007, McArthur was hit by a car while riding his motorcycle on the streets of St. George. McArthur subsequently settled with the driver's liability carrier for $90,000 of the driver's $100,000 policy limit. McArthur later demanded $100,000 in UIM coverage under his own State Farm policy to cover the balance of the $200,000 of damage he allegedly sustained. State Farm denied the claim on the ground that McArthur had not exhausted the full $100,000 limit of the driver's liability policy, a precondition for UIM coverage under his policy.

¶ 5 McArthur's UIM clause purported to begin coverage only when "1. The limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment or judgments or settlements to other persons; or 2. Such limits of liability or remaining part of them have been offered to the insured."

¶ 6 McArthur sued State Farm in federal court for breach of contract and breach of the implied covenant of good faith and fair dealing. Sometime later, both parties filed cross motions for summary judgment. The federal district court granted summary judgment for State Farm, holding that McArthur's settlement with the liability insurer precluded coverage under his UIM policy. The court concluded that the language of the subrogation statute in Utah Code section 31A–22–305.3(5) was a legislative endorsement of exhaustion clauses, and that since McArthur's exhaustion provision was "both clear and unambiguous," it could be voided only on public policy grounds. *McArthur v. State Farm Mut. Auto. Ins. Co.*, No. 2:09–CV–416, 2009 WL 4884382, at *3 (D.Utah Dec. 9, 2009). The court resolved that it could not void the statute absent "clear language from the legislature" as it was not "its role ... to make policy" in light of the statute's contemplation of exhaustion provisions. *Id.*

¶ 7 In so deciding, the district court also distinguished our decision in *State Farm Mutual Automobile Insurance Company v. Green*, 2003 UT 48, 89 P.3d 97, concluding that the enforceability of McArthur's exhaustion provision did not depend on an insurer's showing of actual prejudice to an economic interest. *McArthur*, 2009 WL 4884382, at *3. The court premised this conclusion on two distinctions between exhaustion and consent-to-settle provisions. First, the court concluded that the UIM statute specifically contemplates exhaustion provisions, whereas it does not contemplate consent-to-settle provisions. *Id.* at *4–5. Second, the court held that, unlike a consent-to-settle provision, McArthur's exhaustion clause was not a covenant "capable of being breached," but rather a condition precedent that had not yet been fulfilled. *Id.* Because McArthur's settlement prevented that condition from being met, the court concluded that there was no contract to breach and thus no requirement of proof of prejudice.

¶ 8 McArthur appealed to the Tenth Circuit Court of Appeals, which certified to us the questions whether exhaustion clauses are generally unenforceable in Utah on public policy grounds and, if not, whether the enforceability of such clauses is contingent on the insurer establishing actual prejudice to its economic interest. We have jurisdiction over certified questions of state law under Utah Code section 78A–3–102(1).

## II

¶ 9 McArthur first asks us to find the exhaustion clause unenforceable on public policy grounds. He relies on (A) precedent in a "majority of states" purportedly vitiating exhaustion clauses on public policy grounds; (B) a legislative policy in the Utah Code favoring the availability of UIM coverage; and (C) a series of policy concerns regarding the harsh consequences and questionable benefits of exhaustion provisions.

¶ 10 We find no basis for striking down exhaustion clauses under Utah law. The cited precedent is distinguishable or unpersuasive. And McArthur's policy grounds ignore countervailing considerations and confuse our role with that of the legislature in making policy in the insurance arena.

## A

¶ 11 McArthur first lays claim to a "majority rule" purportedly striking down UIM exhaustion provisions on public policy grounds. Yet although the cited cases cut across as many as twenty-three jurisdictions, we find them largely unhelpful. Some of the cited cases vindicate statutes expressly proscribing exhaustion.[1] Others turn on peculiarities of state statutes that bear little relation to Utah's.[2] These cases are of little relevance to our decision here. Our role in this area is to advance the public policies enshrined in Utah statutes, not to advance others that we might find controlling if we had a policymaking role in the automobile insurance field.[3]

¶ 12 The remaining cases supporting the "majority rule" advocated by McArthur seem to us to ignore this important point about the role of the judiciary. Although courts in other jurisdictions have struck down exhaustion requirements by wielding policymaking authority like that which we exercise in common law fields,[4] this court holds no such power in the field of insurance law. The law governing automobile insurance in Utah is comprehensively regulated by statute. That leaves for the courts the role of interpreting and implementing the policies enacted into law by the legislature. We have no power to make policy choices of our own.[5]

1. See, e.g., State Farm Mut. Auto. Ins. Co. v. Scott, 707 So.2d 238, 243 (Ala.Civ.App.1997) (holding that state UIM statute "uses the concept of *availability* of primary insurance rather than actual *collection* thereof, and renders contrary contract language unenforceable"); Brown v. USAA Cas. Ins. Co., 17 Kan.App.2d 547, 840 P.2d 1203, 1205 (1992) (holding that exhaustion clause was not included in statutory "list of permissible exclusions or limitations to ... UIM coverage"); Vega v. Farmers Ins. Co. of Or., 323 Or. 291, 918 P.2d 95, 101 (1996) (holding "the exhaustion provision violates the 'no less favorable' requirement" of state statute), superseded by statute as recognized in Farmers Ins. Co. of Or. v. Conner, 219 Or.App. 337, 182 P.3d 878 (2008).

2. See, e.g., N.H. Ins. Co. v. Knight, 506 So.2d 75, 77 (Fla.Dist.Ct.App.1987) (voiding exhaustion clauses because UIM statute "provides that the coverage is over and above but shall not duplicate the benefits *available* to an insured" (internal quotation marks omitted)); Hamilton v. Farmers Ins. Co. of Wash., 107 Wash.2d 721, 733 P.2d 213, 216 (1987) (invalidating exhaustion clauses because "[t]he underinsured motorist coverage statute expressly requires underinsured motorist coverage to apply whenever a tortfeasor's insurance coverage is insufficient to compensate the victim for all damages suffered").

3. See Wagner v. State, 2005 UT 54, ¶ 63, 122 P.3d 599 ("[I]t is not our role as a judiciary to override the legislature ... [but] only to interpret and apply the law as it is."); Fay v. Indus. Comm'n, 100 Utah 542, 114 P.2d 508, 516 (1941) ("It is our function to apply the law as written by the legislature ... and not to legislate because we think the law should be otherwise.").

4. See, e.g., Augustine v. Simonson, 283 Mont. 259, 940 P.2d 116, 119 (1997) (striking down exhaustion clauses as contrary to public policy where "[n]either the Montana Legislature nor this Court have specifically addressed the issue of whether an exhaustion clause in an underinsurance policy is enforceable under public policy").

5. See Allen v. Prudential Prop. & Cas. Ins. Co., 839 P.2d 798, 804–05 (Utah 1992) (emphasizing that it is the role of the legislature to determine the desirability, legitimacy, and enforceability of insurance provisions; that the legislative and ex-

## B

¶ 13 That predicate requires our careful examination of the legislative UIM scheme enacted by our legislature. As we read that scheme, it provides no basis for McArthur's overarching policy position—that the legislature deemed UIM coverage too "important" to allow its vitiation by a requirement of exhaustion. We have no doubt that our legislature attached a measure of importance to UIM coverage. It undeniably did, as evidenced by the requirement that insurers make such coverage available and allow its waiver only through a form that includes an express explanation of its purpose. UTAH CODE § 31A–22–305.3(2)(g). But we cannot leap from there to the conclusion that such coverage is *so important* that it cannot be limited by the condition of exhaustion.

¶ 14 The statutory text, in fact, suggests otherwise, as the legislative endorsement of an outright waiver of coverage would seem to encompass the lesser power to condition that coverage on the satisfaction of a preliminary condition. *See Green*, 2003 UT 48, ¶ 16, 89 P.3d 97. And the UIM provisions of the Code, like most all others, represent an attempt by the legislature to balance competing policy considerations, not to "advanc[e] a single objective at the expense of all others." *Myers v. Myers*, 2011 UT 65, ¶ 27, 266 P.3d 806.[6] Thus, we do not understand the legislature to have elevated the goal of ensuring UIM coverage above all others and at all costs. And because there are countervailing policies at stake that are at least arguably consistent with the statutory scheme, we decline McArthur's invitation to deem the statutory endorsement of UIM coverage "too important" to allow any incursion by an exhaustion clause.

¶ 15 We do not mean to suggest that the legislature has expressly considered and affirmatively endorsed the exhaustion requirement. Unlike the federal district court, we do not read the statute to expressly sanction the use of exhaustion clauses as preconditions to UIM coverage. *See McArthur v. State Farm Mut. Auto. Ins. Co.,* No. 2:09–CV–416, 2009 WL 4884382, at *3 (D.Utah Dec. 9, 2009). The statute does, however, contemplate the idea of exhaustion in its mandate to insurers to either waive their subrogation claims or pay the insured within five days after being notified that "all liability insurers have tendered their liability policy limits." UTAH CODE § 31A–22–305.3(5)(a). But although the subrogation statute does not expressly prescribe the use of exhaustion clauses in UIM policies, we do not see this as a legislative blind spot. To the contrary, the legislature's consideration of exhaustion without a proscription or endorsement suggests that it has left the matter to the negotiation and consideration of insurance carriers and their policyholders. Absent specific legislative direction to the contrary, we conclude that UIM exhaustion provisions are generally enforceable and not contrary to the public policy of providing UIM coverage in Utah.

## C

¶ 16 McArthur's remaining policy arguments also falter in light of the comprehensive nature of the legislative insurance scheme. McArthur identifies three principal policies purportedly militating against the enforceability of exhaustion clauses: (1) they impose harsh consequences on policyholders; (2) they create a disincentive for voluntary settlement; and (3) they impose little or no economic burden on the UIM carrier.

¶ 17 We are unpersuaded. McArthur fails to link his policy concerns to any provision of the Utah Code—a fatal failure in light of the comprehensive nature of the legislative insurance scheme and the limited nature of the judicial role. And in any event, the policies McArthur identifies are subject to countervailing considerations that are at least arguably consistent with the statutory scheme.

---

ecutive branches have extensively occupied the field of UIM insurance; and that the courts are reluctant to second-guess the policy judgments of the legislature and the insurance commissioner).

**6.** *See also Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 23 n.6, 248 P.3d 465 (explaining "that most statutes represent a compromise of purposes advanced by competing interest groups, not an unmitigated attempt to stamp out a particular evil").

### 1

¶ 18 McArthur first contends that exhaustion requirements impose harsh penalties on policyholders and incentivize a "kind of litigation gamesmanship." This argument fails on three grounds.

¶ 19 First, the supposed policy identified by McArthur is unmoored to any provision of the statute. Without any citation to statutory text, McArthur's argument appears as an open invitation for this court to embrace his policy vision as the official policy of the State of Utah. That misunderstands our role. As noted above, our role in a field that is comprehensively occupied by legislation is to interpret and implement the policies enacted into law by the legislature. To the extent McArthur is advocating policies beyond those embraced in the statutory scheme, he should take them to the legislature or the insurance commissioner, not to this court.

¶ 20 Second, even if the legislature could be deemed to have expressed disdain for UIM clauses causing disproportionate harm to policyholders, McArthur's argument would still falter. Even in the face of substantial public policy concerns, we are hesitant to void conditional exclusion provisions in insurance policies where the insured retains the authority to opt out of the coverage altogether. See Green, 2003 UT 48, ¶ 16, 89 P.3d 97. As we noted in Green, "[w]here the statutory scheme allows consumers the option of refusing coverage altogether, it is difficult to see how a policy exclusion that simply attaches conditions to coverage could be unenforceable as against public policy." Id.

¶ 21 Finally, McArthur's policy position would not sustain a judicially manageable standard in any event. McArthur credibly complains of the hardship of a condition denying UIM coverage in a case where his settlement with the liability insurer was only $10,000 short of the policy limits. But there are countervailing policy considerations on the other side, as an exhaustion clause understandably is aimed at reducing the insurer's burden of investigating the underlying settlement and determining whether the policyholder is in fact underinsured. And if we were to embrace McArthur's position, we would be putting ourselves on a path that would require us to weigh the competing policies in circumstances where the balance is different, as where the policyholder settles for one-half of the liability insurance limits. We find the weighing of these competing policies outside our judicial capacity, particularly in a field as regulated as that of automobile insurance.

### 2

¶ 22 McArthur next asks us to invalidate exhaustion clauses on the ground that their enforcement deprives policyholders of control over their claims and dampens the likelihood of voluntary settlements. In the abstract, the policy favoring settlement seems substantial, as is the interest of an insured in controlling his claim. But again these interests are not tied to any express provisions of the statute, and it is not our position to vindicate these concerns at the expense of others.

¶ 23 In any event, moreover, there are again countervailing policies at stake, such as the goals of protecting the insurer's subrogation rights; of preventing collusive or nominal settlements; and of providing a means for UIM insurers to reduce costs, and thereby premiums, by shifting the burden of liability limit determinations to the liability carrier. See id. ¶ 18. In light of these considerations, we cannot conclude that the ability of an insured to control his claim "weigh[s] so heavily" against the exhaustion provision that we can deem such clauses "generally unenforceable." Id. ¶ 20.

### 3

¶ 24 McArthur's third policy argument falters on similar grounds. It is certainly true, as McArthur notes, that the UIM carrier is entitled to a credit for the full policy limits of the underlying liability coverage. But that does not mean that the UIM carrier has no viable economic interest at stake. Nor does it sustain a finding of "constructive exhaustion," as some courts have concluded. See, e.g., Horace Mann Ins. Co. v. Adkins, 215 W.Va. 297, 599 S.E.2d 720, 728–29 & n.12 (2004). Even with full credit for policy lim-

its, the UIM carrier still has a stake in demanding enforcement of an exhaustion requirement, which allocates not just the limits of the UIM insurer's liability, but also the burden of investigating and confirming the basis for UIM coverage. Again, a decision proscribing the enforceability of the exhaustion requirement would compound the administrative costs of insurance companies and thus, ultimately, the premiums of their policyholders. It is not our role to second-guess the wisdom of the economic deal struck between UIM carriers and their policyholders. The proper audience for policyholder concerns about that deal is the legislature—or perhaps the competitive market for UIM coverage—not the courts.

¶ 25 We accordingly reject McArthur's various attempts to invalidate the exhaustion clause on public policy grounds and uphold its general enforceability.

### III

¶ 26 As a fallback position, McArthur contends that even if exhaustion provisions survive public policy scrutiny, his failure to exhaust was a "technical breach" that caused no prejudice to State Farm, not a "material breach" sufficient to establish a "basis for denying coverage" to McArthur. *State Farm Mut. Ins. Co. v. Green*, 2003 UT 48, ¶¶ 31–32, 89 P.3d 97. Under *Green*, McArthur notes that consent-to-settle provisions were treated as covenants whose breach could sustain a denial of coverage only upon a showing of prejudice to the insurer, *id.*, and he contends that exhaustion clauses should be treated the same way. Because McArthur claims that State Farm cannot show prejudice of the sort identified in *Green*, he insists that the prejudice requirement in *Green* should effectively revive his UIM coverage even if exhaustion clauses generally survive public policy scrutiny.

¶ 27 We disagree. McArthur's argument is premised on a threshold error equating the consent-to-settle clause in *Green* with the exhaustion provision at issue here. Our analysis in *Green* proceeded on the premise that consent-to-settle clauses were personal *covenants*, whose *breach* justifies the termination of the insurance agreement only upon proof of materiality or prejudice. Exhaustion clauses are different. They are properly understood not as *covenants* subject to *breach*, but as *conditions precedent* to the availability of insurance coverage. And the failure of a condition precedent sustains the termination of the insurance agreement regardless of materiality or prejudice. On the basis of this distinction, we reject McArthur's fallback argument and uphold State Farm's right to rely on the exhaustion clause without proof of materiality or breach.

¶ 28 The distinction between covenants and conditions precedent is significant. A contractual covenant is a "promise[ ] between the parties to the contract about their mutual obligations." HOWARD O. HUNTER, MODERN LAW OF CONTRACTS § 10:1 (2012). If a contractual provision is deemed a covenant, it creates specific legal duties for the parties and gives rise to remedies in the case of a breach. *See* 8–30 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 30.12 (2011). "A promise in a contract creates a legal duty in the promisor and a right in the promisee." *Id.* And once a contract is finalized, each party assumes these legal duties and rights. If the contract is breached, however, the non-breaching party retains the "right to seek the remedies available for a breach," MODERN LAW OF CONTRACTS § 10:1, including, in appropriate circumstances, termination or rescission of the contract, *see Polyglycoat Corp. v. Holcomb*, 591 P.2d 449, 451 (Utah 1979). Some such remedies, however, are available only upon proof of "materiality" of the breach,[7] or prejudice to the non-breaching party. *See, e.g., Green*, 2003 UT 48, ¶¶ 29–31, 89 P.3d 97.

¶ 29 Conditions precedent are different. A condition is "an event, not certain to occur, which must occur ... before performance under a contract becomes due." RESTATEMENT (SECOND) OF CONTRACTS § 224

---

7. *See Saunders v. Sharp*, 840 P.2d 796, 806 (Utah Ct.App.1992); *see also Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 26, 124 P.3d 269 ("It is well-settled law that one party's breach excuses further performance by the non-breaching party if the breach is material.").

988

(1981). Conditions differ from covenants in at least three respects. First, no duties arise between the contracting parties until the condition has been fulfilled.[8] The failure to fulfill "a material condition precedent relieves the obligor of any duty to perform." *Harper v. Great Salt Lake Council, Inc.*, 1999 UT 34, ¶ 14, 976 P.2d 1213 (citing 3A ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 630, at 20–21 (1960)).

¶ 30 Second, parties whose obligations are dependent on a condition precedent have no right to contract remedies until that condition is fulfilled and a binding covenant is thereby formed. 8–30 CORBIN ON CONTRACTS § 30.12. As the federal district court correctly noted in its ruling on summary judgment, conditions precedent are not "ordinary term[s] capable of being breached by either party." *McArthur v. State Farm Mut. Auto. Ins. Co.*, No. 2:09–CV–416, 2009 WL 4884382, at *5 (D.Utah Dec. 9, 2009). Instead, any conditions precedent in a contract must have been met or fulfilled *before* any covenants arise. Accordingly, where a condition precedent has not been fulfilled, there is no contract or covenant to breach and thus no need to consider materiality or prejudice.

¶ 31 Finally, conditions precedent typically fall outside the control of the parties to the contract, often requiring some environmental trigger (such as "weather permitting") or action by a third party (such as "upon the lender's approval") for the contract to begin. MODERN LAW OF CONTRACTS, § 10:1.[9] "Although one of the parties to the agreement may be able to influence the occurrence of a condition, its incidence usually is a matter of fate or of the decision of one or more third parties." *Id.* On the other hand, "covenants are almost always within the control of the contracting parties." *Id.*

¶ 32 The determination whether a given contractual provision is a covenant or a condition is generally a question of the intent of the parties to the contract. "Words such as 'on condition that,' 'if,' and 'provided,' are words of condition, and in the absence of indication to the contrary, the employment of such words in a contract creates conditions precedent." [10]

¶ 33 With this background in mind, we conclude that the State Farm exhaustion clause is a condition precedent and not a covenant. We base this conclusion on the language of McArthur's policy, which provides that

THERE IS NO COVERAGE UNTIL:

1. THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OR JUDGMENTS OR SETTLEMENTS TO OTHER PERSONS; OR

2. SUCH LIMITS OF LIABILITY OR REMAINING PART OF THEM HAVE BEEN OFFERED TO THE INSURED.

¶ 34 Under these terms, the exhaustion clause is properly characterized as a condition precedent. The word "until" exemplifies a "word[ ] of condition." [11] And the clause states plainly that no duties arise on the part of State Farm to pay UIM benefits until all liability limits have been paid or offered to the insured by the liability carrier. Moreover, the exhaustion condition is dependent on the actions of a non-contracting third party—the liability insurer. Finally, we see nothing in the text of the provision to suggest that this exhaustion of liability limits is not the very "event, not certain to occur, which must occur ... before performance under a contract becomes due." RESTATEMENT (SECOND) OF CONTRACTS § 224.

8. 8–30 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 30.12 (2011) ("The non-occurrence of a condition will prevent the existence of a duty in the other party....")

9. *See also Welch Transfer & Storage, Inc. v. Oldham*, 663 P.2d 73, 76 (Utah 1983) ("Where fulfillment of a contract is made to depend upon the act or consent of a third person over whom neither party has any control, the contract can not be enforced unless the act is performed or the consent given.").

10. *Gen. Steel, Inc. v. Delta Bldg. Sys., Inc.*, 297 Ga.App. 136, 676 S.E.2d 451, 454 (2009) (alteration and internal quotation marks omitted).

11. *Id.*

¶ 35 Accordingly, we conclude that this exhaustion provision is a condition precedent to the formation of a contract. We therefore hold that the failure of this condition is alone sufficient to defeat State Farm's duty to provide UIM coverage under the insurance agreement. No proof of prejudice or materiality is required.

¶ 36 McArthur insists that this conclusion is irreconcilable with our analysis in *Green.* We disagree. For one thing, in *Green* the parties never raised the covenant/condition distinction. That case was litigated on the assumption that a consent-to-settle clause is a covenant, and the dispute between the parties concerned only the question whether that covenant was material.[12]

¶ 37 In any event, moreover, the consent-to-settle clause in *Green* included terms that at least arguably placed it in the covenant category. It stated that UIM coverage would be refused

FOR ANY INSURED WHO, WITHOUT OUR WRITTEN CONSENT, SETTLES WITH ANY PERSON OR ORGANIZATION WHO MAY BE LIABLE FOR THE BODILY INJURY AND THEREBY IMPAIRS THE RIGHT TO RECOVER OUR PAYMENTS.

*Green,* 2003 UT 48, ¶ 7, 89 P.3d 97. In contrast with an exhaustion provision, an agreement not to settle without an insurer's consent is wholly within the control of the insured, who may choose to ignore or abide by the clause. That factor is a significant indication that a consent-to-settle clause is properly treated as a covenant and not a condition.

¶ 38 The placement of the consent-to-settle clause is also significant. Unlike a condition precedent, which is commonly placed at the beginning of an insurance policy to enhance notice and to clarify its status as a condition precedent, the *Green* consent-to-settle clause was located near the end of the policy, after the terms of UIM coverage and liability limits were outlined. Thus, the parties' treatment of the consent-to-settle clause as a covenant was understandable. We see no reason to question that conclusion here, and thus no inconsistency between our decision in *Green* and our holding here.

## IV

¶ 39 For these reasons, we hold that UIM exhaustion provisions are not generally unenforceable as a matter of public policy. Furthermore, because they are conditions precedent and not covenants capable of being breached, no showing of prejudice is required to sustain their invocation.

Justice DURHAM, concurring:

¶ 40 Though the legislature has strongly endorsed UIM coverage, this court cannot identify a legislative policy expressly articulated in the Utah Code to bar exhaustion clauses from limiting the availability of UIM coverage. I thus join the majority opinion. I write separately, however, to highlight the policy issues that exhaustion clauses create.

¶ 41 A review of general policy considerations suggests that exhaustion clauses in the UIM context may contravene public policy as yet not expressly adopted in the statute. UIM insurance exists to protect insured Utahns who have been injured in an accident from being undercompensated for their injuries. By requiring drivers to carry UIM coverage, the legislature has already expressed a strong policy interest favoring such coverage. *See* UTAH CODE § 31A–22–302(1)(c). UIM coverage can be waived only by written consent after the insured has been informed of the purpose and applicability of UIM coverage, *id.* § 31A–22–305.3(2)(g)(i)–(ii), which further suggests that the legislature strongly favors UIM coverage. By limiting potential recovery of UIM claims, exhaustion clauses may very well frustrate the

---

12. *Green,* 2003 UT 48, 89 P.3d 97. The *Green* court variously noted that "we then consider whether Green breached the terms," *id.* ¶ 12; that "we finally address whether Green's breach was a material breach," *id.;* and referred to "Green's breach of the consent to settle exclusion," *id.* ¶ 22. The operative word in each of these references, as with many others in *Green,* is "breach"—a term typically associated with failure to fulfill or comply with contractual covenants. *See* 8–30 CORBIN ON CONTRACTS § 30.13 (urging against the use of the term "breach" with respect to contractual conditions).

legislature's clear intent to protect Utahns from underinsured drivers.

¶ 42 The legislature has also expressed a strong policy interest in favor of speedy and inexpensive conflict resolution. An entire part of the Utah Code is dedicated to promoting efficient operation of the courts and encouraging the use of alternative dispute resolution for speedy and inexpensive settlement of civil disputes. *See, e.g., id.* § 78B–6–203. Further, our legislature has endorsed speedy, inexpensive, and extra-judicial settlement of UIM claims by statutorily endorsing arbitration as an alternative to litigation. *Id.* § 31A–22–305(8)(a). Exhaustion clauses that deny recovery until settlements *fully* satisfy the underinsured's policy limits prolong the settlement process and encourage litigation.

¶ 43 Insureds may seek to settle below policy limits for many legitimate reasons. Settlement below policy limits may be preferred if insurance limits are too low to justify the expense of a trial. These same considerations suggest settlement below policy limits may result in a higher net recovery when compared to the costs of litigation. Additionally, a claimant may have an immediate financial need to settle below policy limits. By requiring claimants to resolve claims against the tortfeasor's insurer at the policy limits, exhaustion clauses can create extensive delay and harm those who have suffered serious injury and need to collect UIM benefits.

¶ 44 Many other states with UIM statutory schemes have voided exhaustion clauses. While the majority finds these cases unpersuasive, they nonetheless demonstrate a national trend towards invalidation of exhaustion clauses. Relatively few states ban exhaustion clauses outright. *See, e.g., Hill v. Am. Family Mut. Ins. Co.,* 150 Idaho 619, 249 P.3d 812, 819–21 (2011) (holding "exhaustion clauses in UIM automobile policies to be void, unenforceable, and severable," then declining to "implement the constructive-exhaustion doctrine or to otherwise replace exhaustion clauses with any other judicially created language"). Rather, most states that have addressed the validity of exhaustion claus-es in the UIM context have adopted a judicially created constructive-exhaustion doctrine. *See, e.g., Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 7 P.3d 973, 977–78 (Ariz.Ct.App.2000); *Rucker v. Nat'l Gen. Ins. Co. (In re Rucker),* 442 N.W.2d 113, 117 (Iowa 1989); *Bogan v. Progressive Cas. Ins. Co.,* 36 Ohio St.3d 22, 521 N.E.2d 447, 453 (1988), *overruled in part on other grounds by Ferrando v. Auto-Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 781 N.E.2d 927 (2002); *Horace Mann Ins. Co. v. Adkins,* 215 W.Va. 297, 599 S.E.2d 720, 727 (2004). By treating *any* settlement with the tortfeasor's insurer as equivalent to receipt of the *full* liability limits, recovery of damages under UIM coverage is limited to damages that exceed the tortfeasor's liability limit. The constructive-exhaustion doctrine thus balances the insured's interest in settlement with the insurer's interest in indemnification.

¶ 45 Most states invalidating exhaustion clauses (whether outright or through constructive exhaustion) have done so upon finding that exhaustion clauses contravene their states' public policy. The Supreme Court of Montana, for example, invalidated exhaustion clauses because they lessen the insured's total recovery by promoting litigation, "fail to recognize that the insured may have a legitimate and valid reason for accepting less than the tortfeasor's policy limits," and allow the tortfeasor's insurance carrier to "force the injured party to go to trial by offering less than the policy limits, thereby increasing costs, litigation, and delay." *Augustine v. Simonson,* 283 Mont. 259, 940 P.2d 116, 120 (1997). The Montana court concluded that invalidating exhaustion clauses harmonized with the intent of UIM coverage and with the public policy "to encourage settlement and avoid unnecessary litigation." *Id.* Similarly, the Supreme Court of Nevada invalidated exhaustion clauses "because they unnecessarily promote litigation costs, increase the number of trials, and unreasonably delay the recovery of [UIM] benefits." *Mann v. Farmers Ins. Exch.,* 108 Nev. 648, 836 P.2d 620, 621 (1992), *overruled in part on other grounds by White v. Cont'l Ins. Co.,* 119 Nev. 114, 65 P.3d 1090 (2003). The Supreme Court of Iowa also invalidated exhaustion

clauses on public policy grounds, holding that invalidation of these clauses eases the burden of litigation, encourages prompt payment, and prevents needless complication in the settlement process. *See In re Rucker*, 442 N.W.2d at 115–16.

¶ 46 While I find these policy considerations persuasive, I recognize that, as we stated in *State Farm Mutual Automobile Insurance Co. v. Green*, where the legislature has expressly "allow[ed] consumers the option of refusing coverage altogether, it is difficult to see how a policy exclusion that simply attaches conditions to coverage could be unenforceable as against public policy." 2003 UT 48, ¶ 16, 89 P.3d 97. Barring further guidance from the legislature, I feel constrained to concur with the majority and uphold the validity of exhaustion clauses in the UIM context.

¶ 47 It would be helpful for the legislature to revisit the UIM statute to provide further guidance in this area. Other states have incorporated constructive exhaustion into their UIM statutory schemes. For example, Illinois' UIM statute specifically allows exhaustion clauses but stipulates that "[a] judgment or settlement of the bodily injury claim in an amount less than the limits of liability of the bodily injury coverages applicable to the claim shall not preclude the claimant from making [a UIM] claim against the [UIM] coverage." 215 ILL. COMP. STAT. 5/143a–2(7). A similar approach could be adopted in Utah's statute to resolve the troubling policy issues that exhaustion clauses raise.

Justice LEE authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice PARRISH joined.

Justice DURHAM filed a concurring opinion, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, and Justice PARRISH joined.